706 F.2d 1
 30 Fair Empl.Prac.Cas. 593,
31 Fair Empl.Prac.Cas. 1324,
30 Empl. Prac. Dec. P 33,173,
32 Empl. Prac. Dec. P 33,622
Lynda LeBoeuf COSTA, Plaintiff, Appellee,
v.
John A. MARKEY, et al., Defendants, Appellants.
 No. 81-1361.
 United States Court of Appeals,
First Circuit.
 Dec. 3, 1982.
Opinion En Banc May 23, 1983.
 
 Armand Fernandes, Jr., New Bedford, Mass., for defendants, appellants.
 Thomas F. McKenna, Boston, Mass., with whom Mariann Zampano, Brighton, Mass., was on brief, for plaintiff, appellee Lynda LeBoeuf Costa.
 Francis X. Bellotti, Atty. Gen., Betty E. Waxman, Asst. Atty. Gen., Government Bureau, and Thomas A. Barnico, Asst. Atty. Gen., Government Bureau, Boston, Mass., on brief, for state plaintiff, appellee.
 Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.
 BOWNES, Circuit Judge.
 
 
 1
 We granted the plaintiff's petition for a rehearing to examine the effect on this case of the Supreme Court's decision in Connecticut v. Teal, --- U.S. ----, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). Because we find that Teal mandates a reversal of our prior opinion, we restate the relevant facts.
 
 
 2
 The New Bedford Police Department makes appointments for police officers from a list of eligible applicants that is certified to it by the state civil service personnel division. The lists at issue in this case were derived from a 1972 written examination for the position of police officer. Applicants' names appear on the list in order of their scores on the exam, adjusted for various statutory and court-ordered preferences. Plaintiff took the 1972 examination and was notified in 1973 that her score was 93.3 percent. She passed the city's physical fitness examination in May 1974.
 
 
 3
 Prior to February 1974 New Bedford had two distinct police categories: males were police officers and females were police women. Male applicants were ineligible for positions as police officers if they failed to meet a minimum height requirement of five feet six inches. In February 1974 the city abandoned these separate job categories, and thereafter both men and women competed for positions as police officers. Women applicants were also required to meet the five feet six-inch height minimum.
 
 
 4
 In March 1974 a woman police officer retired. Because the city needed a female officer to perform special duties, related, for example, to female prisoners, it sought special permission from state authorities to engage in sex-specific hiring using a list of female applicants already certified for Taunton, Massachusetts. The Massachusetts Commission Against Discrimination authorized New Bedford's use of the Taunton list, but the state Division of Civil Service never certified the list to New Bedford.
 
 
 5
 The Division of Civil Service supplied New Bedford with an integrated list of male and female applicants on July 30, 1974, that was derived from the 1972 examination. Plaintiff's name was mistakenly omitted from this list, but was included on August 7, 1974, after the city was notified of the error. Her name, however, was incorrectly placed higher on the list than it should have been.[1] This error was corrected, but not until February 1975, well after the allegedly discriminatory acts occurred.
 
 
 6
 In August 1974 plaintiff was interviewed for a position as a police officer in New Bedford, but was rejected because she failed to meet the five feet six-inch height requirement. If her name had appeared in the correct place on the July 30 list, she would not have received the interview. Thus, application of the height requirement prevented plaintiff from obtaining a job as a police officer for which she was not eligible under the civil service requirements.
 
 
 7
 After an additional female police officer retired and use of the July 30 list did not result in the hiring of any women, New Bedford sought and received approval to hire from a list dated August 12, 1974. This list was derived from the July 30 list, but contained only the names of the female applicants. Plaintiff's name correctly appeared first on this list. Plaintiff, however, was again rejected because she failed to meet the height requirement. Two women who placed third and fourth on the list satisfied the height requirement and were appointed to positions as police officers. The woman appearing second on the list was also disqualified because of the height requirement.
 
 
 8
 Plaintiff brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2, using a disparate impact theory of discrimination. Plaintiff alleged that New Bedford's use of the height requirement discriminated against her on two separate occasions: once, when the integrated list was used, and again, when the female-only list was used. We start with the integrated list. Plaintiff produced undisputed evidence that eighty percent of the male population is at least five feet six inches tall, while less than twenty percent of the female population reaches this height. The city defended on the basis of the incorrect placement of plaintiff's name on the applicant list for police officers. The district court held that, although plaintiff was deprived only of an "invalid appointment" as a police officer, the defendants nonetheless had violated Title VII. The court denied plaintiff back pay, but issued a declaratory judgment in her favor. Neither party appealed this judgment.
 
 
 9
 As to the female-only list, the district court held that the second application of the height requirement also violated plaintiff's rights under Title VII and entitled her to back pay and other relief. The defendants appealed, and we reversed.
 
 
 10
 In our decision we concluded that because the height requirement was applied to women only there could be no disparate effect on women and hence no prima facie case of disparate impact discrimination. In so doing we rejected plaintiff's argument, which relied primarily on the Second Circuit's opinion in Teal v. Connecticut, 645 F.2d 133 (2d Cir.1981), aff'd, --- U.S. ----, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982), that the height requirement was one component of a selection process that excluded eighty percent of all women applicants and that this alone violated Title VII even though the overall result of the selection process was not objectionable. We explicitly declined to follow the Second Circuit's approach in Teal, and the Supreme Court's subsequent affirmance of Teal made this reconsideration necessary.
 
 
 11
 In Connecticut v. Teal, --- U.S. ----, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982), the Supreme Court considered "whether an employer sued for a violation of Title VII of the Civil Rights Act of 1964 may assert a 'bottom line' theory of defense." Id. at ----, 102 S.Ct. at 2528. Under such a theory, an employer using an employment criterion that has an adverse impact on a group protected by Title VII can defend on the ground that the adverse impact is offset by other measures and the final result is an appropriately balanced work force. The Court held "that the 'bottom line' does not preclude [a plaintiff] from establishing a prima facie case, nor does it provide [an employer] with a defense to such a case." Id. at ----, 102 S.Ct. at 2529.
 
 
 12
 In Teal, the plaintiffs, four black employees of the Department of Income Maintenance of Connecticut, sought to upgrade their positions from provisional to permanent Welfare Eligibility Supervisors. The first step in the promotion process was attainment of a passing score on a written examination. Failure of this test precluded an applicant from further consideration for promotion. Passing the test meant that the applicant moved on to later stages of the selection process in which the employer considered various other criteria, such as past work performance and recommendations of supervisors. Plaintiffs failed the written exam and brought suit alleging a violation of Title VII.
 
 
 13
 Plaintiffs produced evidence that the written examination had a significantly disparate effect on black candidates; the black passing rate was sixty-eight percent that of the white. The employer defended on the basis of the bottom line result of its promotion process. It argued that its additional factors in the promotion process, those considered once an applicant passed the written test, resulted in promotion of a greater percentage of black than white candidates.
 
 
 14
 Rejecting the employer's arguments, the Court explained that in determining whether the plaintiff had established a prima facie case under a disparate impact theory of discrimination the proper focus is not on the "bottom line" results of the hiring process, but rather on the particular step in the process alleged to have a discriminatory effect.
 
 
 15
 In considering claims of disparate impact under Sec. 703(a)(2) this Court has consistently focused on employment and promotion requirements that create a discriminatory bar to opportunities. This Court has never read Sec. 703(a)(2) as requiring the focus to be placed instead on the overall number of minority or female applicants actually hired or promoted.
 
 
 16
 Id. at ----, 102 S.Ct. at 2532 (emphasis in original). Continuing on to a discussion of its decision in Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), a case concerning height and weight requirements for prison guards, the Court explained:
 
 
 17
 Although we noted in passing that women constituted 36.89 percent of the labor force and only 12.9 percent of correctional counselor positions, our focus was not on the "bottom line." We focused instead on the disparate effect that the minimum height and weight standards had on applicants: classifying far more women than men as ineligible for employment.
 
 
 18
 --- U.S. at ----, 102 S.Ct. at 2533. The Court concluded that "[t]he suggestion that disparate impact should be measured only at the bottom line ignores the fact that Title VII guarantees these individual respondents the opportunity to compete equally with white workers on the basis of job-related criteria." Id. (emphasis in original).
 
 
 19
 Teal teaches that the proper place to evaluate the strength of a Title VII plaintiff's prima facie case of disparate impact discrimination is the point at which the employer's neutral criterion has a discriminatory effect. The Court's focus must be on the first step in the employment process that produces an adverse impact on a group protected by Title VII, not the end result of the employment process as a whole. When it is shown that an employer's rule disproportionately affects members of a class protected by Title VII, eliminating them from competition for an employment opportunity, the plaintiff establishes a prima facie case, and the burden shifts to the employer to show job-relatedness. The employer cannot point to the results of its process, but must justify use of the discriminatory element in that process.
 
 
 20
 Our original decision focused on the end result of New Bedford's hiring process. We reasoned that the height requirement could not have a discriminatory effect on women because the city, during this phrase of its police officer recruitment, hired only women. We explained that "[a]bsent any discriminatory purpose, we see no justification for looking behind a result that does not reveal a hiring that has a disproportionately adverse impact on the relevant minority labor pool." Costa v. Markey, 677 F.2d 158, 161-62 (1st Cir.1982). Teal requires us, however, to look behind the result and evaluate the disparate impact of the height requirement itself, not the end result of its application in this particular case.
 
 
 21
 In the typical disparate impact case, two groups, one protected by Title VII and one not, are competing for employment opportunities. The employer applies a facially neutral rule to both groups, but the adverse results of the rule fall disproportionately on the group protected by Title VII. The sticking point here is that in this instance of the city's application of its height requirement women were excluded only relative to other women. While this may be used as a way to distinguish this case from Teal, we think to do so would evade Teal 's specific rejection of the "bottom line" defense.
 
 
 22
 Were we to focus in this case on the city's hiring of only women, we would be focusing on the "bottom line." It is undisputed that New Bedford's five feet six-inch height requirement resulted in far more women than men being classified as ineligible for appointment as police officers. The city routinely applied the height requirement to both male and female applicants. In this case the city applied the requirement to women only and hired only women. But this is no defense to a prima facie case of disparate impact discrimination. It seeks to justify the disparate effect of the rule in general by pointing to the end results of one particular application of the rule. This is the "bottom line" approach which is proscribed by Teal. In light of Teal, we hold that when, as here, an employer uniformly applies a rule to male and female applicants and applies it in one round of hiring decisions to a pool of only female applicants, the rule must be job-related if in its regular application it has a disparate effect on women.
 
 
 23
 We realize that an argument can be made that Teal does not apply to a sex-specific list where men and women are not in competition for the same job because a plaintiff cannot establish a prima facie case if the result of the particular application of the employer's neutral rule only generates statistics about how women fared as compared to other women. Such an argument, however, overlooks the proper focus for examining the existence of a prima facie case. The Supreme Court has never required a plaintiff to use statistics from the actual application of a neutral rule when establishing a prima facie case.
 
 
 24
 There is no requirement ... that a statistical showing of disproportionate impact must always be based on analysis of the characteristics of actual applicants .... [R]eliance on general population demographic data [is] not misplaced where there [is] no reason to suppose that physical height and weight characteristics of [one state's] men and women differ markedly from those of the national population.
 
 
 25
 Dothard v. Rawlinson, 433 U.S. 321, 330, 97 S.Ct. 2720, 2727, 53 L.Ed.2d 786 (1977) (citations omitted). If there is reason to doubt the accuracy with which national statistics reflect the effect of the rule on the particular employer's labor pool, more narrowly tailored statistics may be required. See New York City Transit Authority v. Beazer, 440 U.S. 568, 586 n.29, 99 S.Ct. 1355, 1366 n.29, 59 L.Ed.2d 587 (1979). A case involving a height standard does not require resort to these more exacting statistics.
 
 
 26
 We hold that plaintiff has established a prima facie case of disparate impact discrimination by making an undisputed showing that New Bedford's use of its height requirement excluded far more women than men from competing for positions as police officers. Since the city did not seek to justify its requirement by proving job-relatedness,[2] plaintiff has proven a complete violation of Title VII.
 
 
 27
 The final issue is relief. The parties have stipulated to the amount of back pay, interest, and attorney's fees and the seniority and wage level to which the plaintiff would be entitled if she prevails. The city defendants,[3] however, dispute whether plaintiff is entitled to back pay at all, the time from which back pay is to be computed, and if she is entitled to back pay, they argue that the state should be jointly liable for any award.
 
 
 28
 The defendants recognize and we agree that once a violation of title VII is proven, the successful plaintiff is presumptively entitled to back pay. See City of Los Angeles Department of Water & Power v. Manhart, 435 U.S. 702, 719, 98 S.Ct. 1370, 1381, 55 L.Ed.2d 657 (1978); Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). "The Albemarle presumption in favor of retroactive liability can seldom be overcome, but it does not make meaningless the district courts' duty to determine that such relief is appropriate." City of Los Angeles Department of Water & Power v. Manhart, 435 U.S. at 719, 98 S.Ct. at 2372. In particular, the district court is required to exercise its discretion in accord with the purposes of title VII. "[B]ackpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." Albemarle Paper Co. v. Moody, 422 U.S. at 421, 95 S.Ct. at 2373 (footnote omitted). The defendants claim that in this case two special circumstances exist to justify denial of a back pay award without frustrating the central purposes of title VII.
 
 
 29
 The first is reliance on a state statute. Defendants rely on a line of cases, decided before Albemarle, in which the courts ruled that an employer's compliance with a state law designed to protect women, although a violation of title VII, was an important factor in determining whether the plaintiff was entitled to back pay. See, e.g., Williams v. General Foods Corp., 492 F.2d 399, 407 (7th Cir.1974); Ash v. Hobart Manufacturing Co., 483 F.2d 289, 292-93 (6th Cir.1973); Kober v. Westinghouse, 480 F.2d 240, 246-49 (3d Cir.1973). The Supreme Court in Albemarle did not reach the question of whether reliance on female protective statutes provides an employer with a shield from back pay liability, Albemarle Paper Co. v. Moody, 422 U.S. at 423 n. 18, 95 S.Ct. at 2374 n. 18, and although at least two circuit courts since Albemarle have stated that such reliance would be a factor in the equitable balancing at the remedy stage, see Palmer v. General Mills, 600 F.2d 595, 598-99 (6th Cir.1979) (dictum); Stewart v. General Motors Corp., 542 F.2d 445, 451 (7th Cir.1976) (dictum), cert. denied, 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977); contra Stryker v. Register Publishing Co., 423 F.Supp. 476, 477 (D.Conn.1976), we need not decide this question in the present case.
 
 
 30
 In the line of cases to which defendants look for support, the state statutes in question unequivocally commanded the employer to treat women employees differently than male employees. Such a statute, for example, would place limits on the hours a woman could work or on the strenuousness of the tasks she could perform. In the typical case the employer was caught between the proverbial rock and a hard place. That is, it could comply with either the commands of title VII or the state statute, but not both. The courts reasoned that the employer should not be penalized with a back pay award when it relied in good faith on a valid state statute.
 
 
 31
 In this case, there is no statute that commanded New Bedford to adopt the height requirement. The statute to which defendants point only authorizes a city or town to adopt a height requirement if it chooses to do so. See 1973 Mass. Acts ch. 351. The statute did not present New Bedford with the dilemma inherent in cases in which the state statute irreconcilably conflicts with title VII; such a conflict is the factor that tips the equitable balance in a defendant's favor.
 
 
 32
 The second special circumstance that defendants claim requires the court to deny back pay is their own good faith. We think that Albemarle prohibits a court from denying back pay solely on the basis of the employer's good faith. Although in Albemarle the Court ruled only that an employer's lack of bad faith is not a sufficient reason for denying back pay, 422 U.S. at 422, 95 S.Ct. at 2373-74, the factors the defendants used to show absence of bad faith are almost identical to those asserted here, and the Court's reasoning, therefore, is equally applicable here.
 
 
 33
 In Albemarle defendant's claim of no bad faith was based on its attempts to recruit minorities and its lack of knowledge that its seniority system violated title VII despite its disparate effect on blacks. Here, defendants contend that their good faith is demonstrated by their taking affirmative steps to hire women and their lack of intent to discriminate. Defendants, thus, in effect ask us to deviate from the holding that Albemarle compels.
 
 
 34
 We are not convinced that denial of back pay would not frustrate the purposes of title VII. Denying back pay on the basis of an employer's innocent intentions would make the remedy "a punishment for moral turpitude, rather than a compensation for workers' injuries. This would read the 'make whole' purpose right out of Title VII ...." Albemarle Paper Co. v. Moody, 422 U.S. at 422, 95 S.Ct. at 2374. Moreover, too close an "emphasis on the employer's aspirations and intentions accords too little weight to the legal standards that govern under Title VII. That Act focuses on effects, not purposes." Cohen v. West Haven Board of Police Commissioners, 638 F.2d 496, 504 (2d Cir.1980). Were we to deny back pay here we would eliminate an important incentive for employers to undertake self-examination of their employment practices and discard those that have an illegal discriminatory effect.
 
 
 35
 Defendants next claim that their back pay liability was cut off as of the date of their subsequent offer to place plaintiff on the police force if she met the applicable civil service regulations. Plaintiff argues, first, that any offer was not "bona fide" because it was necessarily conditioned on plaintiff's obtaining a place on a civil service list, a factor the city could not control, and second, that she was not obligated to accept the offer because it did not include back pay and retroactive seniority. The Supreme Court's recent decision in Ford Motor Co. v. EEOC, --- U.S. ----, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), controls our disposition of this issue.
 
 
 36
 In Ford Motor Co. the Court held that "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability," id. at ----, 102 S.Ct. at 3070, and that an employer's failure to include in the offer retroactive seniority or back pay does not make the offer unconditional and is not a special circumstance justifying rejection. Id. at ---- n. 7, ---- - ----, 102 S.Ct. at 3062 n. 7, 3065-71. From our examination of the record we are unable to discern the exact date on which the city made an offer to plaintiff and whether the offer was unconditional as defined in Ford Motor Co. We must therefore remand to the district court so that it can determine the amount of back pay due in the light of Ford Motor Co.
 
 
 37
 Finally, we uphold the district court's limitation of the back pay award to the city defendants only. The single act of discrimination that led to an award of back pay was the application of the height requirement to plaintiff during competition involving the all-women list. As we noted earlier, the city's adoption of the height requirement was completely voluntary. Although the state permitted an individual city to adopt a height requirement, it in no way compelled New Bedford to do so, and it clearly did not mandate adoption of a requirement that violated title VII. In short, neither the plaintiff nor the city produced any evidence that the state was responsible for the discrimination at issue.
 
 
 38
 Our prior opinion finding no liability is reversed, and the case is remanded for further proceedings consistent herewith.
 
 
 39
 LEVIN H. CAMPBELL, Circuit Judge (concurring).
 
 
 40
 I concur in the analysis of the court. While Chief Judge Coffin points out certain differences between Teal and this case, and while my personal views remain in accord with our original Costa opinion (and with Justice Powell's dissent in Teal), I am not persuaded that Teal is distinguishable. When the Supreme Court decides a case, I think we must ascribe a certain generality to its opinion; the present issue seems to me to be subsumed in principle, if not in every respect, by the language and holding in Teal. Accordingly I think we must affirm the district court.
 
 
 41
 COFFIN, Chief Judge (dissenting).
 
 
 42
 This case seems to me unlike most cases resulting in a divided panel. Instead of a head-on clash of arguments (there is/is not probable cause, sufficient evidence, due process, etc.), the difference between my brothers and me lies in our choice of a starting point. I insist that, because there has been no discrimination against women in the process of filling the positions at issue here, there is no prima facie case to begin with. My brothers' position has to be that although women have not been discriminated against, the use of a criterion of choice--height--which in other circumstances can be a means of discriminating against women, is sufficient to make out a prima facie case here. Because this seems to me to provide a remedy when there has been no wrong and to carry abstract disparate impact analysis far beyond that articulated in Connecticut v. Teal, --- U.S. ----, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982), I dissent.
 
 
 43
 At the outset, I must assume some responsibility for what I consider to be current confusion as to the relationship between the situation in this case and that in Connecticut v. Teal. In our first opinion, (Costa I), I described Teal as the "mirror image of this case and specifically declined to follow the Teal approach. In part because of that language I agreed that in light of the Supreme Court's affirmance of Teal we should rehear this case and make sure that the two cases differ significantly. I think they do.
 
 
 44
 The plaintiff in this case had urged us to accept the Second Circuit's opinion in Teal as guidance for our resolution of her claim. We could (and perhaps should) have dismissed Teal as simply irrelevant to a situation where the challenged barrier never had any disproportionate effect on women. Instead, we described the cases as "mirror images", a description which has caused no small amount of confusion and which I feel some obligation to attempt to clarify. In describing Teal as the mirror image of this case, I meant to highlight the differences rather than the similarities between the two cases. Both cases involved a pass-fail hiring barrier that statistics demonstrated had a greater impact on members of the protected class than on non-members. Both also involved an additional aspect of the hiring process that operated to remove the impact of that barrier. But there the similarity ends. They are mirror images and not identical situations because the aspects of the process that operated to remove the overall impact of the barrier were at different ends of the process. In Costa there was no discrimination to begin with; in Teal the initial discrimination was compensated for at the end. That timing is a crucial distinction between the two cases because, as we pointed out in Costa I, the initial decision in this case to hire only women meant that the pass-fail barrier never had any disparate effect on women. There was, therefore, no question of remedying the discriminatory effect of an element in a process with a non-discriminatory bottom line. There was never any discriminatory effect.[1]
 
 
 45
 As I understand the debate between the majority and the dissent in Teal, the issue was whether an employer should be excused for utilizing a barrier that statistics showed disproportionately affected blacks as long as it added enough blacks at the end of the hiring process to meet the appropriate racial ratio. The majority concluded that a non-discriminatory "bottom line" was no justification for discriminating against individuals along the way. They found it "clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." --- U.S. at ----, 102 S.Ct. at 2535. In Justice Powell's view, the result reached by the majority is an unprecedented expansion of the theory of disparate impact. As he points out, Title VII plaintiffs have been allowed to proceed under either a theory of disparate treatment--by establishing that they, as individuals, have been discriminated against--or of disparate impact--by establishing that they have been victims of a facially neutral practice that excludes a disproportionate number of members of his protected group. Because the latter theory necessarily requires reference to the group rather than to the individual, Justice Powell would not allow a plaintiff proceeding under this theory to "have it both ways", to infer discrimination by reference to the group and then ignore the fact that the group as a whole has not been injured. In his view, this is "to confuse the individualistic aim of Title VII with the methods of proof by which Title VII rights may be vindicated." Id. at ----, 102 S.Ct. at 2537 (Powell, J., dissenting).
 
 
 46
 Whatever the merits of the dispute in Teal, neither side addressed the issue raised by plaintiff here. My brothers, I submit, have made a leap beyond the position taken by the majority and criticized by the dissent in Teal. For, as far as I can tell, the Supreme Court has never held, or even intimated, that a Title VII plaintiff should be able to recover for discrimination on the basis of her sex when it is impossible that she was disadvantaged in relation to any man. We held in Costa I, and my brothers still agree, that at the only point in time when the height requirement had any effect on plaintiff, she was in competition only with other women for a job as a police officer.[2] As we pointed out in Costa I, courts that have addressed similar situations agree that when there is no competition between the sexes, there can be no discrimination on the basis of sex. See Stroud v. Delta Air Lines, Inc., 544 F.2d 892 (5th Cir.1977); Gerdom v. Continental Airlines, Inc., 648 F.2d 1223 (9th Cir.1981).
 
 
 47
 The majority reasons that "[w]ere we to focus in this case on the city's hiring of only women, we would be focusing on the 'bottom line' ", a focus forbidden by Teal. To the contrary, I submit that in this case, the city's hiring of only women is the introductory paragraph. It is the key to everything else that follows. According to Teal, once a disparate effect is demonstrated, no amount of undoing of that effect will suffice. In this case, there is no effect, so we need not worry about the employer's "bottom line".
 
 
 48
 My dispute with my brothers, I believe, comes down to what is required for a plaintiff to demonstrate disparate impact. I have no question that in another context, where the sexes are in competition, the statistics provided here, showing that as of 1971-74 the average height of women between the ages of 25 and 34 was 5 feet, 4.1 inches while that for men in the same age bracket was 5 feet, 9.6 inches, would establish a prima facie case of disparate impact and require an employer to demonstrate that his height requirement was job related. My point in Costa I and the point which I reiterate here is that the fact that a hiring barrier excludes more women than men is irrelevant when the women cannot lose out to men. When only women are competing for a job as a police officer, a height requirement may be unfair but it is not a violation of Title VII.
 
 OPINION EN BANC
 
 49
 COFFIN, Circuit Judge.
 
 
 50
 This case has a long history. On May 3, 1982, we held that plaintiff could not prevail in her claim of employment discrimination based on a 5 feet 6 inches height requirement. Although the height requirement would, in other contexts, have a disparate impact on women, we determined that the height requirement could have had no such impact in this case because only women were in competition for the job. Costa v. Markey (Costa I ), 677 F.2d 158 (1st Cir.1982).
 
 
 51
 Subsequently, we agreed to rehear the case in light of the Supreme Court's decision in Connecticut v. Teal, --- U.S. ----, 102 S.Ct. 2525, 73 L.Ed.2d 130 (U.S.1982). After reviewing supplemental briefs and hearing oral argument, a majority of the panel determined that Teal required that we reverse our original position and allow plaintiff to recover based on her evidence that the height requirement would exclude more women than men, regardless of the fact that in this case the only job applicants were women. Costa v. Markey (Costa II ), 706 F.2d 1 (1st Cir.1982).
 
 
 52
 On March 9, 1983, we granted rehearing en banc. Counsel were requested to file supplemental memoranda addressing the question whether
 
 
 53
 "this court [should] view the relevant job here at issue (1) as a single job open only to women or (2) as one of a set of police force jobs in general open to both men and women? If the latter, are not men and women in competition for the same jobs?"
 
 
 54
 For reasons set out below, a majority of the court now agrees that Teal does not require that we reverse our original determination that plaintiff has not made out a prima facie case of disparate impact. Nor are we persuaded by any other factors regarding the hiring process at issue here that plaintiff was discriminated against on the basis of her sex. Accordingly, we reaffirm the judgment we rendered on May 3, 1982, denying plaintiff recovery.
 
 I.
 
 55
 Plaintiff's initial argument before us relied in part on the Second Circuit's opinion in Teal v. Connecticut, 645 F.2d 133 (2d Cir.1981), aff'd, --- U.S. ----, 102 S.Ct. 2525, 73 L.Ed.2d 130 (U.S.1982), that Title VII plaintiffs may recover if they are disadvantaged by one component of a selection process that has a disparate impact on a protected group of which they are members, even if their employer "remedies" the disparate impact by subsequent affirmative measures. Since then, the Supreme Court has affirmed the Teal approach, holding that a nondiscriminatory "bottom line" is not a defense to a prima facie case of employment discrimination.
 
 
 56
 In Costa I, we specifically declined to follow the Teal approach. In a position similar to that of Justice Powell, dissenting in Teal, we concluded that if the overall effect of a hiring process is not discriminatory, we saw no reason to look behind that result to possibly discriminatory elements of the process.[1] We no longer have the liberty of offering that broad justification for our result in this case, but we can still point out that Teal and this case are distinguishable in at least one crucial respect. In Teal, the employer sought to remedy the effects of a discriminatory barrier by affirmatively hiring members of the disadvantaged minority group. In this case, although plaintiff was discriminated against on the basis of her height, there was never any discrimination of the type for which Title VII provides a remedy. Because the sexes were not in competition, the height requirement had no disparate effect on women. There was, therefore, no question of remedying the discriminatory effect of an element in a process with a nondiscriminatory "bottom line".
 
 
 57
 A brief review of the facts should make the absence of discriminatory effect clear. The failure to hire at issue here arose from an effort in 1974 by the City of New Bedford, Massachusetts (city) to hire two female police officers. The city makes appointments for police officers from a list of eligible applicants that is certified to it by the state civil service personnel division. Applicants' names appear on the list in order of their scores on a written exam, adjusted for various statutory and court-ordered preferences. Ranking on the list is not affected by an applicant's height.
 
 
 58
 Prior to February 1974, the city had two distinct police categories: males were police officers and females were police women. Male applicants were ineligible for positions as police officers if they failed to meet a minimum height requirement of 5 feet 6 inches. In February, 1974, the city abandoned these separate job categories, and thereafter both men and women competed for positions as police officers. Women applicants were also required to meet the 5 feet 6 inches height requirement.
 
 
 59
 In the spring and summer of 1974, two female police officers retired. Because the city needed female officers to perform certain duties, related, for example, to female prisoners, and because there were no women high enough on the integrated list to be hired, the city sought and received approval from the Massachusetts Commission Against Discrimination to hire from a list of exclusively female applicants. The most recent integrated list was therefore separated and the city hired the top two women on the women-only list who also met the 5 feet 6 inches height requirement. Although plaintiff's name appeared first on the list, she was rejected because she did not meet the height requirement.
 
 
 60
 Plaintiff brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2, asserting that application of the height requirement was discriminatory because it had a disparate impact on women. The district court agreed with plaintiff and granted her back pay and other relief.[2] We reversed, concluding that if the height requirement was applied to women only, it could have had no disparate effect on women. Plaintiff, therefore, had failed to establish a prima facie case of employment discrimination.
 
 
 61
 After lengthy consideration, we are satisfied that our original reasoning was sound. Plaintiff simply failed to make it over the initial hurdle of demonstrating that the challenged barrier had a discriminatory effect on women. Absent a discriminatory effect, there is no need to engage in further inquiry regarding the employer's non-discriminatory "bottom line".
 
 
 62
 Another plaintiff--perhaps one denied employment because of height a year after initiation of the separate lists--might be able to argue that because the job sought was that of a "police officer", the duties of which were basically the same for men and women, the sexes were in competition and the height requirement did have a disparate impact on women. In such a case, the city's height requirement might operate to exclude more women than men. In this case, however, the evidence is uncontroverted that competition between men and women was at least temporarily suspended so that the city could hire two needed female police officers. Without the height requirement, the city would still have hired only two women. The only difference is that plaintiff would have been one of them.
 
 
 63
 We are compelled to decide the case on the facts before us. On these facts, the height requirement cannot be viewed as having a disparate effect on women. In the absence of a discriminatory effect, Teal simply does not apply. See Teal, --- U.S. at ----, 102 S.Ct. at 2534 ("[a] non-job-related test that has a disparate racial impact, and is used to 'limit' or 'classify' employees, is 'used to discriminate' within the meaning of Title VII whether or not it was 'designed or intended' to have this effect and despite an employer's efforts to compensate for its discriminatory effect.") (Emphasis added.)
 
 II.
 
 64
 Besides relying on Teal, plaintiff has an additional basis for challenging our decision in Costa I. In Costa I, we relied on a line of cases in which courts have refused, in the absence of competition between the sexes, to find that a facially neutral employment barrier discriminated against women on the basis of sex. See, e.g., Stroud v. Delta Airlines, Inc., 544 F.2d 892 (5th Cir.1977). Plaintiff suggests that subsequent authority has cast doubt on the reasoning of those courts. Her argument, however, is unpersuasive. Neither Gerdom v. Continental Airlines, Inc., 692 F.2d 602 (9th Cir.1982), nor County of Washington v. Gunther, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), found disparate impact where the sexes were not in competition. Both cases dealt with disparate treatment, the proof of which is not based on the effect on two competing groups of a facially neutral barrier, but on intentional discrimination against an individual because of his or her race or sex. We remain unpersuaded that a hiring barrier can have a disparate impact on a protected group when competition for the job is only among members of that protected group.
 
 
 65
 We reaffirm our original decision of May 3, 1982. The part of the district court's judgment relating to denial of employment from the all-women list of August 12, 1974 is reversed.
 
 
 66
 BOWNES, Circuit Judge (dissenting).
 
 
 67
 I continue to adhere to my majority opinion in Costa II, 706 F.2d 1 (1st Cir.1982), and briefly state why I think my brethren are wrong.
 
 
 68
 It seems clear to me that there were not two separate jobs at issue here; the city gave up its distinction between police officers and police women in 1974, prior to the employment decisions at issue here. Thus, the height requirement was uniformly applied to all male and female applicants for police officer positions.
 
 
 69
 Plaintiff established a prima facie case by showing that the height requirement acted more harshly on women than men. The city's attempt to defend on the basis of its hiring only women fails in light of Connecticut v. Teal, --- U.S. ----, 102 S.Ct. 2525, 73 L.Ed.2d 130 (U.S.1982). The final statistical outcome of a hiring process, according to Teal, is irrelevant in assessing the strength of a plaintiff's prima facie case. Rather, the analysis focuses on the step of the hiring process that plaintiff claims is discriminatory; here, the height requirement. General population statistics are sufficient to determine whether a height requirement discriminates against women; there is no need for a plaintiff to resort to statistics that reflect the actual applicant pool. See Dothard v. Rawlinson, 433 U.S. 321, 330, 97 S.Ct. 2720, 2727, 53 L.Ed.2d 786 (1977).
 
 
 70
 The majority errs by focusing on the wrong aspect of Teal. It attempts to distinguish this case from Teal by pointing to the employer's motivation. In Teal, as the majority correctly notes, the employer included additional factors in its hiring process to compensate for one discriminatory element in that process. Here, the city's motivation for the second round of hiring was not to compensate for initial discrimination. This distinction, however, is of no moment. The Court in Teal was not concerned with the employer's reason for including additional factors in its hiring process. The crucial issue for the Court was the employer's attempt to point to the end results (bottom line) of its hiring process to justify the discriminatory element. This is precisely what New Bedford is attempting in this case and what Teal prohibits.
 
 
 
 [1]
 Plaintiff's position on the list was based on the ranking of an applicant who not only had scored 93.3 percent on the examination, as plaintiff had, but also was a member of a racial minority to be accorded preference, which plaintiff was not
 
 
 [2]
 The height requirement rule has been eliminated
 
 
 [3]
 All further references to defendants are to the city defendants, the city officials of New Bedford. The state is also a party defendant
 
 
 [1]
 In Costa I, we also described Teal as standing for an approach to reviewing disparate impact discrimination claims that we rejected. In a position similar to that of Justice Powell, dissenting in Teal, we concluded that if the overall effect of a hiring process is not discriminatory, we saw no reason to look behind that result to possibly discriminatory elements of the process. We no longer have the liberty of offering that broad justification for our result in this case, but we can still point out that Teal and this case are different in the crucial respect that the challenged hiring barrier in one had a disparate effect on women and that in the other did not. Nothing in Teal requires us to find a discriminatory effect where there is none
 
 
 [2]
 It has not been argued and there is no evidence that the relative numbers of men and women hired would have varied according to the number or quality of the eligible women applicants. The City requested permission to hire from a list of women because of its need for female police officers and the fact that, wholly apart from the height requirement, there were no women high enough on the integrated list to be hired. Thus it is doubtful that after the lists were separated the number of women hired would have increased had there been no height requirement
 
 
 [1]
 We also described Teal and the case before us as "mirror images", a description which has caused some confusion as this case has evolved. Use of the term was intended to highlight the differences rather than the similarities between the two cases. Both cases involved a pass-fail hiring barrier that statistics demonstrated had a greater impact on members of the protected class than on non-members. Both also involved an additional aspect of the hiring process that operated to remove the impact of that barrier. But there the similarity ends. They are mirror images and not identical situations because the aspects of the process that operated to remove the overall impact of the barrier were at different ends of the process. In Teal the initial discrimination was compensated for at the end; in Costa the separation of the hiring lists meant that there was no discrimination to begin with
 
 
 [2]
 The district court also agreed that plaintiff had been discriminated against by an earlier application of the height requirement. During the integrated list period, plaintiff's name was incorrectly placed higher on the list than it should have been. Based on this placement, plaintiff was interviewed for a position as a police officer, but was rejected because of her height. The district court held that, although plaintiff was deprived only of an "invalid appointment" as a police officer, defendants nonetheless had violated Title VII. The court denied plaintiff back pay, but issued a declaratory judgment in her favor. Since neither party appealed this judgment, we have had no occasion to reconsider it