**Kent EARNHARDT, Plaintiff,**

v.

**COMMONWEALTH OF PUERTO RICO, et al., Defendants.**

**Civ. No. 81–194.**

United States District Court, D. Puerto Rico.

Nov. 23, 1983.

Carlos Garcia Gutierrez, Santurce, San Juan, P.R., for plaintiff.

Esteban Nuñez, Dept. of Justice of P.R., San Juan, P.R., for defendant.

## OPINION AND ORDER

TORRUELLA, Chief Judge.

This is an action arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (The Act), for discrimination in employment. Plaintiff alleges his position was terminated for reasons of national origin.

The evidence in the case established that Plaintiff Kent Earnhardt (Earnhardt), who was born in the continental United States, was hired by the Commonwealth of Puerto Rico Health Department (Department) as a consultant in Family Planning by a contract dated October 24, 1975. The decision to hire Earnhardt was made by Dr. Antonio Silva Iglecia (Dr. Silva) then Assistant Secretary of Health in charge of the Family Planning Division. The contract under which he worked 95 hours per month was due to expire on June 30, 1976. It was renewed for an additional year shortly before that date. In September, 1976, the new contract was amended to allow for prorated sick leave and vacation time.

During his tenure with the Family Planning Division, he worked closely with Dr. Silva. Earnhardt prepared speeches and other policy statements for him, as well as represented him at an international conference on population. He also worked on various research projects. He became the Subdirector of the Planning and Development Division under Sandra Quiñones López (Quiñones), who became his immediate supervisor in July of 1976. Earnhardt's contract was terminated by a memorandum dated December 20, 1976, by invoking clause 11 of the contract, which gave either party the right to terminate the contract with 30 days notice.

▮ Plaintiff brought this action in February, 1981. Upon Motion by the Defendants, we dismissed the case because Earnhardt failed to file his discrimination charge with the Equal Employment Opportunity Commission (EEOC) within 180 days of receipt of notice of discharge, as required by law. Earnhardt, believing that the Department was estopped from raising that defense because it failed to inform him of his rights, appealed the dismissal. The case was remanded by the Circuit Court of Appeals [1] for factual determination on the issue of whether or not the action was time-barred.

We find that the Department of Health did not post the notices required by the EEOC regulations to inform employees of the legal rights under the Equal Employment Opportunity Act and the procedure by which those rights could be claimed.

Upon learning of the termination of his contract, Earnhardt sought from the Department the reasons for the dismissal and what legal remedies were available to him. He was told by both the Department officials and its attorney that there was no legal remedy because termination was allowed under the contract. Taking their answer in good faith he did not consult a lawyer at this time. Earnhardt did not learn of his rights until he visited the EEOC offices in Washington, D.C., while looking for employment. It was there that he saw a poster for the first time, asked questions about it and immediately filed his charges. We therefore find that the Commonwealth is equitably estopped from raising the defense that Earnhardt's action is time-barred, because it own failure to post the notices as required by the Act, 42 U.S.C. § 2000e–10(a), was the primary reason for Earnhardt's failure to file sooner. We are therefore required to inquire into the merits of the case.

No reason was given for the contract termination. Dr. Silva testified that he had been told by the Program administration to invoke Clause 11 so that the termination would not have to be justified by specific reasons.

Testimony shows that Earnhardt was the only Continental working in the Family Planning Program. He was reminded of this many times as he was often referred as a "gringo" by his supervisors and various co-workers. He was critized for being

---

1. *Earnhardt v. Commonwealth of Puerto Rico,* 691 F.2d 69 (1 Cir.1982).

"muy Americano" ("very American"). Evidence shows Dr. Silva to be overly sensitive to professional differences of opinions when they came from "Americans." He took offense at criticism of his Program's operation made by the New York Region of the United States Department of Health, Education and Welfare. His reply to the report of that agency's visiting team of evaluators is couched in ethnic terms. He also told Earnhardt that it did not matter if the economic impact on the program was insignificant; no "American" could tell him what to do even in the case of a single sterilization since it was Puerto Rican law which applied. There existed in the work place the consciousness that "Americans" were outsiders, and, that Earnhardt was of them.

The evidence shows that after the arrival of Ms. Quiñones, an issue seems to have been created over Earnhardt's keeping of time sheets and punch cards. Plaintiff appeared anxious to get on with his work; he even managed to keep his work on schedule while working around various personal problems and emergencies which took him away from Puerto Rico in early October, 1976. Earnhardt requested of his supervisor, in a memo of October 14, 1976, permission to work off-peak hours on the computerized mappings that he was doing in order to maximize the machine's efficiency.

The overall impression we get from the memorandums submitted by in evidence is that Plaintiff was a worker whose goal was to get on with his work and accomplish it in the most efficient manner possible. When personal commitments required his absence from work in December, 1976, Earnhardt did the work due at that time, ahead of schedule. The Department still objected to his planned absences, however, the evidence does not show that such strict and inflexible attitudes regarding absences were enforced against Puerto Rican and Latin American employees who needed to absent themselves from work.

Dr. Silva testified that Earnhardt was fired at this particular time because the incumbent government, having lost the election in November, 1976, desired to turn over to the incoming administration only the best employees in the division. Yet there is no evidence that any other employee was terminated or, for that matter, even evaluated at this time. Such action was in direct violation of Puerto Rican law [2] which forbids Commonwealth agencies to effectuate any change in the personnel status of any government employee during the sixty days before and sixty days after a general election. It was during this period that Earnhardt received his termination notice.

The plaintiff in a Title VII action must carry the initial burden under the statute of establishing a prima facie case of discrimination. *Furnco Construction Corporation v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), *McDonnald Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff has met that burden: He has clearly established that he was the only member of a group ("the American") classified as distinct and different by the other employees and supervisors. At times the references were made with an emotional animosity. He was referred to by pejorative national origin nicknames. As the only Continental in the program, he was the only person whose employment was terminated during a period when such action is illegal under Puerto Rican Law.

As the Court explained in *Waters, supra,* 438 U.S. at 577, 98 S.Ct. at 2949, the prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."

Once the Plaintiff succeeds in proving the prima facie case, the burden shifts to

---

**2.** 3 L.P.R.A. § 1337, see also *Ortiz v. Alcalde de Aguadilla,* 107 D.P.R. 819 (1978), and Exhibit 9—Normative Letter No. 1–76 about prohibition of changes in personnel in the pre and post election periods.

the Defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Green, supra*, 411 U.S. at 802, 93 S.Ct. at 1824. The explanation must be legally sufficient to justify a judgment for the Defendant *Burdine*, supra, 450 U.S. at 255, 101 S.Ct. at 1094. In this case, the explanation offered by the Defendant is not credible. The desire to hand over to a new administration the best people in the agency cannot stand in light of the revelation that no one else was even evaluated. The failure of the Department of Health to preserve the records relating to the employment and termination of Ernhardt,[3] records which could possibly support the Department's claim that Earnhardt was an inefficient worker, is somewhat suspect. The memorandums regarding the time records are directed only to Earnhardt, so no indication is given as to enforcement against other employees.

We do not find that the Department of Health has sufficiently justified its dismissal of Earnhardt. Its failure to adequately rebut Plaintiff's prima facie case leads us to conclude that Earnhardt's contract was prematurely terminated for discriminatory reasons. We therefore find the Defendant is liable to the Plaintiff for the salaries that he did not receive from January 21 through June 30, 1977, the time remaining under the contract, at the stipulated salary of $850.00 per month.

The Clerk shall enter Judgment accordingly.

IT IS SO ORDERED.

---

[3.] 29 C.F.R. Section 1602.31 requires the Commonwealth to maintain the records of an involuntarily terminated employee for two years. The Department's Personnel Director himself could not locate the records when requested for the EEOC investigation.