Kent EARNHARDT, et al.,
Plaintiffs, Appellees,

v.

The COMMONWEALTH OF PUERTO
RICO, et al., Defendants, Appellants.

Kent EARNHARDT, Plaintiff, Appellant,

v.

The COMMONWEALTH OF PUERTO
RICO, et al., Defendants, Appellees.

Nos. 84–1055, 84–1105.

United States Court of Appeals,
First Circuit.

Argued June 7, 1984.

Decided Sept. 17, 1984.

Carlos V. Garcia Gutierrez, Santurce, P.R., for Kent Earnhardt, et al.

Gerardo Mariani, Asst. Sol. Gen., San Juan, P.R., with whom Miguel A. Pagan, Deputy Sol. Gen., Dept. of Justice, San Juan, P.R., was on brief, for The Commonwealth of Puerto Rico, et al.

Before BOWNES and BREYER, Circuit Judges, and DOYLE,[*] Senior District Judge.

BOWNES, Circuit Judge.

In this Title VII discriminatory discharge case, based on 42 U.S.C. § 2000e, plaintiff, Dr. Kent Earnhardt (Earnhardt), convinced the district court that his employment with the Commonwealth of Puerto Rico was terminated because of invidious national origin discrimination and the court awarded him his lost salary as damages. Defendant Commonwealth of Puerto Rico (Commonwealth) appeals, maintaining that the district court, 582 F.Supp. 25, erred in concluding the plaintiff was fired as a result of discriminatory animus. Plaintiff Earnhardt cross-appeals the denial of a Federal Rule of Civil Procedure 59(e) motion to amend the back pay judgment to include prejudgment interest and a liquidated sum for loss of fringe benefits.

* Of the Western District of Wisconsin, sitting by designation.

■ The court's subsidiary findings of fact and its ultimate determination of liability are amply supported by the evidence. Because the findings rest on a strong evidentiary base, we rehearse only the factual highlights.

Earnhardt, who was born in the continental United States, was hired by the Commonwealth of Puerto Rico Health Department (Department) by contract dated October 24, 1975. The decision to hire Earnhardt was made by Dr. Antonio Silva Iglecia (Silva), who at that time was Assistant Secretary of Health for the Family Planning Division. The contract, under which he was to work ninety-five hours per month, expired on June 30, 1976. Shortly before that date, the contract was renewed for an additional year. In September 1976, the new contract was amended to allow for prorated sick leave and vacation time.

During his tenure with the Department, Earnhardt worked closely with Silva, preparing speeches and other policy statements. He represented Silva and the Department at an international conference on population and worked on various research projects. Earnhardt subsequently became subdirector of the Planning and Development Division under Sandra Quinones Lopez (Quinones) in July of 1976. Earnhardt's contract was terminated later that year by a memorandum dated December 20, 1976, stating that clause 11 of the contract was the basis for the termination. Clause 11 provided that either party had the right to terminate the contract on thirty days' notice. No reason was given to Earnhardt for the contract termination; Silva testified that he had invoked clause 11 so that the termination would not have to be justified by specific reasons.

The district court found as follows. Earnhardt, the only continental American working in the Family Planning Program, was frequently reminded of this by being addressed as "gringo" by his supervisors and co-workers rather than by his name. He was criticized upon occasion for being "muy Americano" ("very American").

"There existed in the workplace a sense that 'Americans' were outsiders, and that Earnhardt was one of them." Earnhardt's supervisor, Silva, who signed the termination memorandum, was "overly sensitive to professional differences of opinion when they came from 'Americans.'" This was evidenced by a memorandum couched in ethnic terms from Silva responding to a critique by a team of evaluators from the U.S. Department of Health, Education, and Welfare and by comments Silva made to Earnhardt.

The Commonwealth contends that low productivity was the cause of Earnhardt's termination rather than any discriminatory animus of his supervisors and co-workers. We agree with the district court that this proffered reason is not credible: "The overall impression we get from the memorandums submitted [into] evidence is that the plaintiff was a worker whose goal was to get on with his work and accomplish it in the most efficient manner possible." The district court further found that some work rules were applied strictly and inflexibly to the plaintiff in contrast to the flexible application afforded Puerto Rican and Latin American employees in the Division.

Moreover, defendant's own evidence was inconsistent on the reason for the firing. Silva testified that the reason Earnhardt was fired at this particular time lay in the incumbent government's desire to turn over to the incoming administration, to which it had lost the election, only the best employees in the division. Yet there is no evidence that any other employee was terminated, or, for that matter, even evaluated at this time. The district court found that Earnhardt's discharge was in direct violation of a Puerto Rican law which forbids Commonwealth agencies from effectuating any change in the personnel status of any employee during the sixty days before and sixty days after a general election. See 3 L.P.R.A. § 1337; see also Ortiz v. Alcade de Aguadilla, 107 D.P.R. 819 (1978). It was during this sixty-day period

that Earnhardt received his termination notice.

Our review of the record convinces us that the district court's findings were not only not clearly erroneous, but were clearly correct. We, therefore, turn to the plaintiff's cross-appeal, which questions the summary denial of liquidated fringe benefits and prejudgment interest despite the judgment in his favor.

*Plaintiff's Cross-Appeal*

Earnhardt submitted a timely Rule 59(e) motion, Fed.R.Civ.P. 59(e), to amend the judgment to include within the back pay award prejudgment interest and liquidated fringe benefits, and to fix a sum certain as the amount of judgment. In his proposed findings and judgment submitted to the court after trial, Earnhardt had omitted these requests and petitioned solely for the value of his employment contract with the Commonwealth, at the rate of $850 per month, which was awarded him. Earnhardt's 59(e) motion was denied.

 Where a district court rejects a motion to alter or amend a judgment, the standard of review is whether there was an abuse of discretion. *Robinson v. Watts Detective Agency*, 685 F.2d 729, 743 (1st Cir.1982). Although the district court gave no reason for the denial of the motion, it was not required to do so under the rules and we must assume that the motion received careful consideration. The determination of the amount of damages is, absent legal error, a matter for the finder of fact. It cannot be said that either prejudgment interest or an award for lost fringe benefits must, as a matter of law, be part of the damages awarded in a Title VII case. The question of whether they are necessary to make a plaintiff whole is within the discretion of the district court. This is especially so when the request for such an award comes as an afterthought by the plaintiff. The district court did not abuse its discretion in denying the Rule 59(e) motion.

*The judgment of the district court is affirmed in all respects.*