Miguel A. ROSARIO-TORRES, et al.,
Plaintiffs, Appellees,

v.

Rafael HERNANDEZ-COLON, etc., et
al., Defendants, Appellees.

Appeal of Franklin
MARTINEZ-MONGE,
Defendant.

Miguel A. ROSARIO-TORRES, et al.,
Plaintiffs, Appellants,

v.

Rafael HERNANDEZ-COLON, etc., et
al., Defendants, Appellees.

Nos. 87-2096, 87-2097.

United States Court of Appeals,
First Circuit.

Heard Sept. 12, 1989.

Decided Nov. 8, 1989.

Rafael F. Castro Lang, San Juan, with whom Jose Ramon Perez Hernandez and Rafael Sanchez Hernandez were on brief, for plaintiffs, appellees.

Jose Angel Rey, with whom Zuleika Llovet, Saldana, Rey, Moran & Alvarado, Hato Rey, P.R., Hector Rivera–Cruz, Secretary of Justice, Bayamon, P.R., and Jorge Perez–Diaz, Sol. Gen., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, BOWNES, BREYER, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

More than two years ago, we remarked the "steady drumbeat of civil actions involving claimed politically motivated discharges arising out of the change in administration following Puerto Rico's 1984 gubernatorial election." *Vazquez Rios v. Hernandez Colon,* 819 F.2d 319, 320 (1st Cir.1987). Time has little diminished that diapason. *See, e.g., Arbona–Custodio v. de Jesus–Gotay,* 873 F.2d 409 (1st Cir.1989) (per curiam); *Gonzalez–Vega v. Hernandez–Colon,* 866 F.2d 519 (1st Cir.1989) (per curiam); *Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40 (1st Cir.1988); *Goyco de Maldonado v. Rivera,* 849 F.2d 683 (1st Cir.1988); *Juarbe–Angueira v. Arias,* 831 F.2d 11 (1st Cir.1987), *cert. denied,* 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988). The appeals presently before us are borne aloft on the same winds of political change.

## I

There are nine plaintiffs, each of whom is a member of the New Progressive Party (NPP). Prior to May 1985, they were all employed at the Governor's mansion (La Fortaleza) in Puerto Rico, serving as drivers, messengers, typists, warehousemen, and the like. Although assigned to "career" positions, none of them had been hired in accordance with the recruitment protocol set forth in Puerto Rico's civil service laws.[1] After the Popular Democratic Party won the 1984 election, defendant Martinez–Monge became the new governor's aide in charge of administration. In that capacity, he was the decisionmaker regarding employment at La Fortaleza.

The axe was not long in falling. On May 20, 1985, defendant sent letters iterating that all nine plaintiffs had been recruited in disregard of the regulatory hiring scheme. Eight plaintiffs requested a pretermination hearing, which was held in June 1985. The hearing examiner concluded that the facts recited in the May 20 letters were accurate. All plaintiffs were dismissed shortly thereafter.

Plaintiffs filed suit in Puerto Rico's federal district court under 42 U.S.C. § 1983 (1982), claiming that their dismissals were politically motivated (and thus, violative of the first amendment); and that they had been denied the procedural protections guaranteed to them by the Due Process Clause of the fourteenth amendment.[2] After a bench trial, the district court determined that plaintiffs were entitled to, and had been denied, procedural due process, *Rosario Torres v. Hernandez Colon*, 672 F.Supp. 639, 650–53 (D.P.R.1987); that the pretermination hearings were a "sham," *id.* at 648; and that the plaintiffs had been dismissed solely by reason of their political affiliations, *id.* at 653–55. The court awarded backpay, compensatory damages, punitive damages, attorneys' fees, and costs to all plaintiffs, but ordered only one worker reinstated. *Id.* at 655–56.

The lower court ruling produced two notices of appeal. A panel of this court divided on certain of the questions presented. Defendant's petition for rehearing en banc was subsequently granted and the panel opinions withdrawn. 875 F.2d 351 (1st Cir. 1989). Supplementary briefing and oral argument before the full court followed.

## II

■ We first address a procedural problem. It is a jurisdictional prerequisite that

---

1. We repeat the district court's description of the protocol as it applies to the Office of the Governor (much of which was based upon stipulated facts):

   The Office of the Governor is an Individual Administrator under sections 1341 and 1343 of Title 3, the personnel law. The Office issued Personnel Regulations for its employees at La Fortaleza approved by the OCAP [Central Office of Personnel Administration] on January 3, 1978, pursuant to 3 L.P.R.A. § 1347. The foreword of the regulations indicates they are promulgated and implemented in furtherance of and on areas essential to the merit principle. The regulations contain provisions for the hiring of career employees. Specifically, section 7.4 requires applicants to compete through written, oral, physical, or performance examinations. Those applicants who pass the examination are placed on a register of eligibles, ranked according to their examination grades. Section 7.5.1. Whenever the Office of the Governor does not have a register of eligibles available, it may use the corresponding registers maintained by the OCAP or any other individual administrator. Section 7.5.4. Under section 7.6, vacancies are to be filled through the Register of Eligibles.

   *Rosario Torres v. Hernandez Colon*, 672 F.Supp. 639, 650 (D.P.R.1987). It is clear that the plaintiffs did not compete for their jobs by examination; that they were not hired from a register of eligibles; and that most (if not all) of them, when hired, did not possess the requisite qualifications (educational and/or experiential) for the positions.

2. Plaintiffs originally sued the governor, Rafael Hernandez Colon, as well as his aide. At the start of the nonjury trial, however, the district court granted plaintiffs' motion to dismiss with prejudice as to Gov. Hernandez Colon. At the time final judgment entered, Martinez–Monge was the sole defendant before the court. We have been informed that he has since left office; his successor, Hector Vazquez–Garcia, is therefore a party to these appeals. *See* Fed.R.App.P. 43(c)(1); *see also* Fed.R.Civ.P. 25(d)(1). For ease in reference, however, we shall continue to treat Martinez–Monge as if he were the only defendant before the court (although any orders herein are, of course, binding upon Vazquez–Garcia, in his official capacity).

a notice of appeal "shall specify the party or parties taking the appeal." Fed.R. App.P. 3(c). If such a notice is not sufficiently particularized, it fails to confer appellate jurisdiction. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988); *Gonzalez–Vega v. Hernandez–Colon*, 866 F.2d at 519. In this instance, plaintiffs' notice of appeal was filed on October 21, 1987. It bore the caption:

MIGUEL A. ROSARIO TORRES, et al., Plaintiffs

The body of the notice, in its entirety, read as follows:

TO THE HONORABLE COURT:

Notice is hereby given that plaintiffs through their undersigned attorneys, appeal to the United States Court of Appeals for the First Circuit from the final judgment entered in the case of caption on September 21, 1987.

There were a total of nine plaintiffs before the district court—yet no plaintiff was named specifically in the notice's text as an appellant, and only Miguel Rosario–Torres was named in the caption. Under these circumstances, the notice of appeal sufficed to bring Rosario–Torres' grievances before us. *See Mariani–Giron v. Acevedo–Ruiz*, 877 F.2d 1114, 1116 (1st Cir.1989) (the presence of a defendant's name in the case caption, "coupled with the statement in the body of the notice of appeal that 'defendants hereby appeal,' ... satisfied as to him the specificity requirement"). But, the notice was wholly inadequate as to the remaining plaintiffs. *See Oakland Scavenger*, 108 S.Ct. at 2409; *Gonzalez–Vega*, 866 F.2d at 519–20; *Santos–Martinez v. Soto–Santiago*, 863 F.2d 174, 175–76 (1st Cir.1988).

We need not wax longiloquent on the topic. Cases previously decided leave no doubt that in this circuit inserting the words "et al." in the case caption cannot fulfill the mandate of Rule 3(c). *See Oakland Scavenger*, 108 S.Ct. at 2409; *Santos–Martinez*, 863 F.2d at 176. The use of the plural ("plaintiffs") in the notice of appeal is equally unavailing; in analogous circumstances, we have refused to entertain an appeal by unnamed plaintiffs based on a notice containing a statement that "all plaintiffs appeal." *See id.; see also Gonzalez–Vega*, 866 F.2d at 520 (use of plural "plaintiffs" in body of appeal notice, together with inclusion of words "et al." in caption, insufficient to meet specificity requirement). Lastly, we—and the large majority of other courts of appeals—have held unequivocally that the specificity rules apply with full force to appeals, like this one, taken before the *Oakland Scavenger* opinion was announced. *See, e.g., Santos–Martinez*, 863 F.2d at 177; *United States v. Spurgeon*, 861 F.2d 181, 183 & n. 3 (8th Cir.1988) (distinguishing *McMichael v. United States*, 856 F.2d 1024 (8th Cir.1988), which declined to apply *Oakland Scavenger* retroactively); *Cotton v. U.S. Pipe & Foundry Co.*, 856 F.2d 158, 162 (11th Cir. 1988); *Meehan v. County of Los Angeles*, 856 F.2d 102, 105 (9th Cir.1988); *Appeal of District of Columbia Nurses' Ass'n*, 854 F.2d 1448, 1449–50 (D.C.Cir.1988) (per curiam), *cert. denied*, —— U.S. ——, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989); *cf. Board of Governors of State Colleges & Universities v. Akins*, —— U.S. ——, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988) (mem.) (vacating judgment and remanding for reconsideration case in which pre-*Oakland Scavenger* notice of appeal that named only one party was held sufficient notice for all parties), *on remand*, 867 F.2d 972, 974 (7th Cir. 1988) (applying *Oakland Scavenger* retroactively).

Without further ado, we conclude that we lack power to entertain the appeal of any plaintiff save Rosario–Torres. Although such a result is admittedly harsh, it is compelled by *Oakland Scavenger*. We have no jurisdiction over purported appeals sponsored by would-be appellants not specified in a timeous notice of appeal.

### III

We are left, then, with two appeals: one on behalf of defendant (who filed a proper and timely notice) and one to Rosario–Torres' behoof. These appeals, in the aggregate, raised five issues, viz.: (1) the propriety of the ruling that plaintiffs' ap-

pointments, though illegal, "created an expectation of continued employment," *Rosario Torres*, 672 F.Supp. at 652, entitling them to "procedural due process," *id.* at 653, which they did not receive; (2) the viability of the finding that the plaintiffs "were dismissed solely because of their political affiliation with the [NPP]," *id.;* (3) whether defendant was qualifiedly immune from liability for money damages, *id.* at 648; (4) whether the compensatory damages awarded to Rosario–Torres were too meager; and (5) Rosario–Torres' complaint that he did not win reinstatement to his government job. There is precious little flesh on the bones of the middle three offerings. The panel was unanimous in upholding the district court on these points, and we granted en banc review principally to consider the first and fifth issues. We think it is enough, therefore, simply to note our acquiescence as to items 2–4, making only a few comments in regard thereto.

■ These plaintiffs, with one possible exception,[3] occupied low-level, nonpolicy-making positions: "[t]hey are modern-day equivalents of the 'hewers of wood and drawers of water.' " *Vazquez Rios*, 819 F.2d at 322 (quoting *Joshua* 9:21). Thus, politics was not a permissible employment criterion. *See generally Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The record is nonetheless replete with evidence that plaintiffs' constitutionally protected conduct was a substantial motivating factor in the decision to cashier them. The district court concluded, supportably, that the firings would not have eventuated absent the protected conduct. The liability threshold was easily crossed. *See Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 286–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977).

■ By the same token, defendant's qualified immunity claim was, on this record, appropriately resolved against him. In May 1985, it was sufficiently clearly established that persons in lowechelon positions such as these could not be fired because of political affiliations. *See, e.g., Fontane–Rexach v. Puerto Rico Elec. Power Auth.*, 878 F.2d 1493, 1496–98 (1st Cir.1988); *Vazquez Rios*, 819 F.2d at 325–26; *see also Roure v. Hernandez Colon*, 824 F.2d 139, 141 (1st Cir.1987) ("Defendants' position that the appointments were void, even if correct as a matter of Puerto Rico law, does not establish that defendants are entitled to qualified immunity with respect to plaintiffs' First Amendment claims."); *see generally Branti*, 445 U.S. at 512 n. 6, 100 S.Ct. at 1291 n. 6. The record justifies the finding that Martinez–Monge could be held liable in money damages for violating plaintiffs' first amendment rights.

■ Finally, the amount of compensatory damages gives us no pause. The size of such an award is reviewed only for clear error. *See, e.g., United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 763–64 (1st Cir. 1985). Where the factfinder speaks on the quantum of damages in response to a plausible evidentiary predicate, the court of appeals will not meddle "so long as the end result does not violate the conscience of the court or strike such a dissonant chord that justice would be denied were the judgment permitted to stand." *Milone v. Moceri Family, Inc.*, 847 F.2d 35, 37 (1st Cir.1988). Notwithstanding plaintiffs' insinuations to the contrary, the trial judge appears to have labored under no misapprehensions or artificial constraints. Because the sum awarded Rosario–Torres as compensatory damages fell "within the universe of possible awards ... supported by the evidence," *Clark v. Taylor*, 710 F.2d 4, 14 (1st Cir.

---

**3.** When separated from government service, the lead plaintiff, Miguel A. Rosario–Torres, was employed as an "Executive Officer III." *Rosario Torres,* 672 F.Supp. at 646. Arguably, that position may land closer to the center of what we have described as "the *Elrod-Branti* spectrum." *Mendez–Palou v. Rohena-Bectancourt,* 813 F.2d

1255, 1259 (1st Cir.1987), quoting *De Abadia v. Izquierdo Mora,* 792 F.2d 1187, 1194 (1st Cir. 1986) (Campbell, C.J., concurring). We need not pursue the point, as defendant has not argued—to us or to the panel—that politics was an appropriate criterion for Rosario–Torres' job. Points neither briefed nor argued are waived.

1983), we cannot brand it legally inadequate.

## IV

Having segregated wheat from chaff, we turn our attention to the two issues which prompted us to rehear these appeals en banc. We discuss them separately.

### A. *Due Process.*

The due process issue in this case turns on whether plaintiffs, having been hired illegally to fill "career" positions, acquired property interests in the positions.

■ The sufficiency of a claim of entitlement to a property interest in public employment must be measured by, and decided with reference to, local law. *Bishop·v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). In a series of cases, we have addressed the precise question in terms of Puerto Rico law, holding unambiguously on three occasions "that under Puerto Rico law any property right associated with a career position is rendered null and void if a violation of the Personnel Act attends the filling of such a position." *Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1173 (1st Cir. 1988); *accord de Feliciano v. de Jesus,* 873 F.2d 447, 452–55 (1st Cir.1989); *Santiago–Negron v. Castro–Davila,* 865 F.2d 431, 435–37 (1st Cir.1989); *see also Arbona–Custodio v. de Jesus–Gotay,* 873 F.2d at 409 n. 2 (alternative holding); *Rosario Torres,* 672 F.Supp. at 650 ("Public employees hired 'illegally' to career positions have no property interest or expectation to continued employment, and therefore, no entitlement to due process prior to termination."). Thus, "to the extent that the plaintiffs were hired in violation of [the agency's rules], they ... could not, upon termination, benefit from the 'property' status of [their 'career'] positions." *Kauffman,* 841 F.2d at 1174.

■ The plaintiffs have launched a two-pronged assault, endeavoring to convince us that this line of cases is wrongheaded, or in the alternative, distinguishable. The panel majority appears to have been persuaded in both respects. The en banc court is not. Having carefully reexamined *Kauffman* and its progeny, and recognizing that the question is close, we continue to believe that *Kauffman* correctly explicates the rule of law and we expressly reaffirm its holding and rationale.

We see no reason to dwell on the subject. Plaintiffs do not seriously dispute Judge Coffin's incisive analysis of pertinent Puerto Rico law, *id.* at 1173–74, nor could they fruitfully do so. Their principal, indeed only, argument against *Kauffman* prescinds from the Supreme Court's decision in *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). But, the *Kauffman* panel was meticulous in distinguishing *Loudermill. See Kauffman,* 841 F.2d at 1174–75. We resist the temptation to carry coals to Newcastle and rest, without further elaboration, on the distinction drawn therein.

Nor do we see a material distinction between the situation at bar and our earlier precedents. The panel sought to differentiate *Kauffman* on the ground that Martinez–Monge himself "hired [other employees] without regard to the Register," including persons who could fairly be viewed as plaintiffs' successors.[4] And, defendant left in place some illegally-hired employees who had been "appointed" to "career" positions at La Fortaleza prior to 1985. *Rosario Torres,* 672 F.Supp. at 647. We fail to see how these facts are relevant. In *Kauffman,* we reasoned that an off-Register appointment was an act "contrary to laws and regulations furthering the underlying values of the Personnel Act," 841 F.2d at 1174, and was thus a nullity. The legal question of a plaintiff's entitlement to a constitutionally-protected property interest in employment "has nothing to do with [defendant's] fault." *de Feliciano,* 873 F.2d at 454. If a plaintiff's engagement

---

**4.** The replacements were named as transitory, rather than career, employees. *Rosario Torres,* 672 F.Supp. at 647.

was null and void, then defendant's misdeeds cannot transmogrify it into something more meaningful. Two wrongs, after all, do not make a right. *See Gray v. Mississippi*, 481 U.S. 648, 663, 107 S.Ct. 2045, 2054, 95 L.Ed.2d 622 (1987) (quoting adage with approval).

*Kauffman* controls. The finding that "defendant violated plaintiffs' rights under the fourteenth amendment," 672 F.Supp. at 653, cannot be sustained.

### B. *Reinstatement.*

The district court, noting that plaintiff Victor Pedraza Rosario (Pedraza) had not found other employment during the pendency of the litigation, ordered him rehired. *Rosario Torres*, 672 F.Supp. at 655. The court, however, recognized its "discretionary power" and declined to reinstate the remaining plaintiffs. *Id.*

■ We note at the outset that our concern lies solely with Rosario–Torres' appeal of this determination. The other unreinstated plaintiffs did not perfect their attempted appeals, and their entitlement claims are not properly before us. *See supra* Part II. By the same token, defendant's original brief *qua* appellant, his petition for rehearing en banc, and his supplementary brief to the en banc court are all bereft of any argumentation addressed to that portion of the district court's order which mandated Pedraza's reemployment.[5] Defendant must, therefore, be deemed to have waived any right to complain about Pedraza's reinstatement. *See, e.g., United States v. McNatt*, 842 F.2d 564, 567 (1st Cir.1988) (conclusory reference, devoid of pertinent argumentation, does not suffice to raise point on appeal). Accordingly, we turn to the narrow question of whether the lower court erred in not restoring Rosario–Torres to the payroll.

Plaintiff asseverates that reinstatement should be an inevitable concomitant to a finding that an employee was jettisoned in violation of constitutional rights. Martinez–Monge, on the other hand, asserts that reinstatement should never be imposed upon a public employer when its accomplishment would force state officials to infringe state law. The panel majority took a view approximating that urged by Rosario–Torres, ruling that persons unconstitutionally discharged may be refused reemployment "only in extraordinary circumstances." Discerning nothing sufficiently out of the ordinary to place this case beyond the norm, the panel set aside the challenged portion of the district court's decree.

■ In tackling the question anew, we reject out of hand the absolutist approach urged by defendant. Where necessary, "remedies to right the wrong of past discrimination may suspend valid state laws." *Boston Chapter NAACP v. Beecher*, 679 F.2d 965, 975 (1st Cir.1982). Thus, in a case strikingly similar to that at bar—involving persons hired to career positions in violation of the Personnel Act and thereafter cashiered because of party affiliation—we held, squarely and recently, that "[o]ne of the remedies available for a political discharge in violation of first amendment rights is reappointment." *Santiago–Negron*, 865 F.2d at 437. We are satisfied with that formulation and have no desire to revisit the proposition. It is established in this circuit, then, that reinstatement was legally available as a means of righting the *Elrod–Branti* wrongs which the district court found to have been perpetrated, notwithstanding the informality with which plaintiff had been hired.

---

5. For reasons obscure to us, the parties chose not to avail themselves of the briefing procedure detailed in Fed.R.App.P. 28(h). Instead, they treated the two notices of appeal separately, and each side filed separate appellant's and appellee's briefs in regard to each appeal. There was an allusion to the legality of Pedraza's reinstatement in defendant's original brief *qua* appellee, but a paralipomena of that sort is not a legally appropriate way of raising a matter. It is a well-settled, and necessary, principle that an appellee cannot assail portions of a judgment favorable to opposing parties without initiating the particular attack in his own notice of appeal and the briefing thereon. *See, e.g., Bath Iron Works Corp. v. White*, 584 F.2d 569, 573 n. 2 (1st Cir.1978); *see also* 9 J. Moore, Moore's Federal Practice ¶ 204.11[3] (2d ed. 1988).

To say reinstatement is available, however, is not to say it is inevitable. Reinstatement is an equitable remedy and the hallmark of equity is the ability to assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis. *See Burton v. Cascade School Dist. Union High School No. 5*, 512 F.2d 850, 853–54 (9th Cir.) (per curiam) (choice of remedy may be influenced by careful weighing of all facts and circumstances), *cert. denied*, 423 U.S. 839, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975); *Pred v. Board of Public Instruction*, 415 F.2d 851, 859 (5th Cir. 1969) (choice of remedy can "depend on all of the facts"). "The essence of equity jurisdiction has been the power ... to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944). In all events, equity is more elastic than wooden—and flexibility seems particularly desirable in cases involving important private rights and public institutions. As the Court has written: "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte–Mecklenburg Bd. of Education*, 402 U.S. 1, 15, 91 S.Ct. 1267, 1275, 28 L.Ed.2d 554 (1970).

Put another way, when we say that reinstatement is "available," but not "inevitable," we mean that reinstatement is a remedy which lies within the discretion of the trial court. Such discretion, of course, is not unbounded. *See Aggarwal v. Ponce School of Medicine*, 745 F.2d 723, 727 (1st Cir.1984) ("[t]he cask which encases a judge's discretion, though commodious, can [nevertheless] be shattered"). A party seeking reinstatement appeals "not to [the court's] inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *United States v. Burr*, 25 F.Cas. 30, 35 (C.C.D.Va.1807) (No. 14,-692d) (Marshall, C.J.), *cited with approval in Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975).[6] Defining those "sound legal principles" in a way which does not transform the trial court's discretion into a gauzy illusion is a perplexing chore, one that has occupied legists since before Lord Eldon despaired of "equity [that] varies like the Chancellor's foot." *See Gee v. Pritchard*, 36 Eng.Rep. 670, 674 (1818).

In employment discrimination cases, suggestions as to when and how reinstatement should be ordered are almost infinitely varied. At the start, we set to one side the Title VII cases, many of which hold that, given a finding of unlawful discrimination, certain equitable remedies, including reinstatement, should ordinarily follow. *See, e.g., In re Lewis*, 845 F.2d 624, 630 (6th Cir.1988); *see also Franks v. Bowman Transp. Co.*, 424 U.S. 747, 770–71, 96 S.Ct. 1251, 1267, 47 L.Ed.2d 444 (1976) (restoration of seniority); *Albemarle Paper*, 422 U.S. at 421, 95 S.Ct. at 2373 (award of backpay). Title VII is *sui generis* for two reasons. First, any decision touching upon remediation must be considered in light of the statute's "central ... purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper*, 422 U.S. at 421, 95 S.Ct. at 2373. Second, because compensatory and punitive damages are not available to Title VII plaintiffs, *see DeGrace v. Rumsfeld*, 614 F.2d 796, 808 (1st Cir.1980) (collecting cases), the district court's palette of available make-whole remedies is scantily endowed. Even awards of backpay are circumscribed: "Back pay liability shall not accrue from a date more than two years prior to the filing of a charge." 42 U.S.C.

---

**6.** Justice Story echoed and elaborated upon Chief Justice Marshall's words:

[Equitable relief] is not a matter of right in either party; but is a matter of discretion in the Court; not of arbitrary or capricious discretion, dependent upon the mere pleasure of the Judge, but of that sound, and reasonable discretion, which governs itself, as far as it may, by general rules and principles; but at the same time, which withholds or grants relief, according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties.

Story, *Equity Jurisprudence* § 742 (1st ed. 1836).

§ 2000e–5(g) (1982). The fewer the available methods of redress, the more likely that "sound legal principles" will counsel in favor of reinstatement as the relief of choice. Any other course would run a high risk of frustrating Title VII's signal purpose.[7] *See Costa v. Markey*, 706 F.2d 1, 6–7 (1st Cir.1982), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 547, 78 L.Ed.2d 722 (1983).

The litigation before us falls not under the Title VII rubric, but within the purview of 42 U.S.C. § 1983 (1982). In the section 1983 milieu, the remedial limitations which encumber Title VII do not pertain. *See Carey v. Piphus*, 435 U.S. 247, 256–57 & n. 11, 98 S.Ct. 1042, 1048–49 & n. 11, 55 L.Ed.2d 252 (1978) (compensatory, exemplary, and punitive damages may be awarded under § 1983 in respect of constitutional rights violations). To be sure, some courts have stated that reinstatement is a presumptive remedy in section 1983 cases as well, but the clarious call is appreciably muted. And, there seems to be considerable imprecision; even on an intra-circuit basis, language varies from case to case and from panel to panel. *Compare, e.g., Allen v. Autauga County Bd. of Educ.*, 685 F.2d 1302, 1305 (11th Cir.1982) (reinstatement required "except in extraordinary cases") *with, e.g., Williams v. City of Valdosta*, 689 F.2d 964, 977 (1th Cir.1982) (reinstatement is a remedy to which plaintiff "is normally entitled ... absent special circumstances") *and Lucas v. O'Loughlin*, 831 F.2d 232, 236 (11th Cir.1987) (prevailing plaintiff "ordinarily entitled to reinstatement absent 'unusual circumstances'"), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988). Attentive review of these and similar cases, *see, e.g., Banks v. Burkich*, 788 F.2d 1161, 1164 (6th Cir. 1986); *Professional Ass'n of College Educators v. El Paso County Community College Dist.*, 730 F.2d 258, 269 (5th Cir.),

*cert. denied*, 469 U.S. 881, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984), persuades us that the "presumption" of reinstatement expressed therein is not a substantive rule of law, but merely an attempt at reformulation of the basic principle that, in determining appropriate relief on the chancery side, courts should weigh and balance the equities.

This does not mean that cases must be decided in a completely *ad hoc* fashion. There are some readily observable constants. Whenever an ex-employee sues alleging wrongful dismissal by a government agency, job restoration may be a material aspect of meaningful relief. Yet in the real world, reinstatement in unlawful-discharge cases often will place some burden on the agency: there will likely be tension (or even hostility) between the parties when forcibly reunited; employees who have assumed duties previously performed by the fired worker will have to be displaced when he or she returns; and, as a result, the public's business may be conducted somewhat less efficaciously. Be that as it may, we agree with those courts which have ruled that such routinely "incidental" burdens, in their accustomed manifestations, are foreseeable sequelae of defendant's wrongdoing, and usually insufficient, without more, to tip the scales against reinstatement when first amendment rights are at stake in a section 1983 action. *See Banks*, 788 F.2d at 1165; *Professional Ass'n*, 730 F.2d at 269; *Allen*, 685 F.2d at 1305; *Sterzing v. Fort Bend Independent School Dist.*, 496 F.2d 92, 93 (5th Cir.1974).

We do not perceive such a positioning of the weighbeam as a departure from general equitable principles. It is, rather, merely a way of setting a starting-point for the district court's consideration. Once this is understood, the "presumption" of rein-

---

7. Regardless, it seems significant that, even while indicating certain equitable relief to be presumptively appropriate in Title VII cases, the Court has still taken pains to reaffirm the salience of trial judges' discretion, instructing courts of appeals to "recogniz[e] that the trial court will often have the keener appreciation of those facts and circumstances peculiar to particular cases," *Albemarle Paper*, 422 U.S. at 421–22,

95 S.Ct. at 2373; *see also City of Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 719, 98 S.Ct. 1370, 1380, 55 L.Ed.2d 657 (1978) (holding that, notwithstanding *Albemarle* presumption, district court gave "insufficient attention to the equitable nature of Title VII remedies" and thereby erred in granting retroactive relief).

statement becomes just the dress of thought, a shorthand manner of saying that equitable considerations different in kind or degree from those regularly accompanying reinstatement must be present if reinstatement is to be withheld from the victim of a first amendment infraction.[8]

■ With these tenets in mind, we examine the record to determine whether the district court's refusal to reinstate Rosario–Torres was sustainable. In so doing, we emphasize that we review a district court's choice of equitable remedies for abuse of discretion, *Independent Oil and Chemical Workers v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988) (injunctive relief); *Earnhardt v. Puerto Rico*, 744 F.2d 1, 3 (1st Cir.1984) (lost fringe benefits; prejudgment interest); *Abeyta v. Town of Taos*, 499 F.2d 323, 328 (10th Cir.1974) (reinstatement), acknowledging that the trial judge, who has had first-hand exposure to the litigants and the evidence, is in a considerably better position to bring the scales into balance than an appellate tribunal. The nisi prius court abuses its discretion only if we are left with a firm conviction that it has committed "a meaningful error in judgment." *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir.1988); *see also In re Josephson*, 218 F.2d 174, 182 (1st Cir. 1954) (Magruder, C.J.).

The record reveals that, above and beyond the incidental burdens which any reinstatement order might impose on a public employer, a number of special considerations were in play in this case. For one thing, the plaintiff had no property right, no vested interest in his position. *See supra* Part IV(A). If reinstated, therefore, he could immediately be fired for no reason or for any permissible reason. Some courts have suggested that this circumstance alone suffices to support a denial of reinstatement to a public-sector job. *See, e.g., Lucas*, 831 F.2d at 236; *Abeyta*, 499 F.2d at 328.

For another thing, plaintiff had been hired illegally. He did not meet the posted requirements for the position (Executive Officer III, *see supra* note 3) which he had occupied.[9] Equity must always be mindful of the public interest. *See United States v. Morgan*, 307 U.S. 183, 194, 59 S.Ct. 795, 801, 83 L.Ed. 1211 (1939) ("It is familiar doctrine that the extent to which a court of equity may grant or withhold its aid, and the manner of moulding its remedies, may be affected by the public interest involved."). In shaping equitable remedies, comity concerns can loom large. *See Rizzo v. Goode*, 423 U.S. 362, 379, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976) ("appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief"). For those reasons, court-ordered reinstatement of illegally-hired, insufficiently credentialed government workers strikes a particularly jarring note. Despite the misconduct of officials, governments cannot lightly be estopped from complying with valid provisions of law. *See, e.g., Heckler v. Community Health Services*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984); *Schweiker v. Hansen*, 450 U.S. 785, 788–90, 101 S.Ct. 1468, 1470–72, 67 L.Ed.2d 685 (1980) (per curiam); *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13, 17–19 (1st Cir.1986). Although reinstatement can be ordered even in such circumstances if the overall equities warrant,[10] *cf. Santiago–Negron*, 865 F.2d at 437 (affirming reinstatement of illegally-hired—but presumably qualified—munici-

---

8. We note that, despite the strong language in which proponents sometimes couch the putative presumption, the courts which coined the term still accord district judges considerable discretion to determine that the presence of "nonincidental" considerations may render reinstatement unwarranted. *See, e.g., Lucas*, 831 F.2d at 236 (trial court could deny reinstatement when plaintiff, in any event, could legally be fired immediately after reinstatement); *cf. Burton*, 512 F.2d at 854 (where plaintiff denied due process, trial court had discretion to refuse reinstatement because plaintiff's expectation of reemployment was speculative).

9. The parties stipulated, for example, that Rosario–Torres fell short of the minimum educational attainment level.

10. That Martinez–Monge himself recruited off-Register, and left in place some illegally-hired staffers, *see supra* at 319, are examples of countervailing equities which had to be considered.

pal employees in political discrimination suit), appellate courts should hesitate to force the hand of a trial judge who decides otherwise in a given case.

Finally, a long period of time had elapsed between Rosario–Torres' discharge and the entry of judgment below. He did not press for immediate reinstatement by way of preliminary injunctive relief, *cf. De Choudens v. Government Development Bank*, 801 F.2d 5 (1st Cir.1986) (en banc) (affirming district court's grant of reinstatement via preliminary injunction pending trial on merits), *cert. denied*, 481 U.S. 1013, 107 S.Ct. 1886, 95 L.Ed.2d 494 (1987), or otherwise. He obtained other suitable employment (with the municipality of Toa Baja) within a month of his dismissal. By the time of trial, he was working for the San Juan municipal government, earning only moderately less than when fired.[11] Although the description in the record is perfunctory, his present job seems fairly comparable to the one which he left behind. Even in the more closely cabined precincts of Title VII, such a consideration has been given weight in the reinstatement calculus. *See Brito v. Zia*, 478 F.2d 1200, 1204 (10th Cir.1973) (trial court had discretion to deny reinstatement to plaintiffs who found, or could have found, other work).

In this case, the district judge sat without a jury, dispensing both legal and equitable relief. He awarded the plaintiff substantial compensatory and punitive damages, as well as backpay, counsel fees, and costs. The judge seems to have weighed and balanced the equities and the parties' rights with care. Mindful of the existence of "special" considerations over and above the routine "incidental" burdens which reinstatement imposes on an employer—particularly the illegality of Rosario–Torres' initial hiring and his lack of formal qualifications for the job—we cannot fault the judge's reluctance to order reemployment. Whether or not we, if writing on a pristine page, might have concluded other-

wise, we are unable to see clear error in the trier's rendition of what was quintessentially a judgment call.

## V

We need go no further. We dismiss the appeals of all plaintiffs other than Rosario–Torres for want of appellate jurisdiction. We affirm the district court's finding that defendant abridged plaintiffs' first amendment rights and should be held to answer in damages therefor. We reverse the court's fourteenth amendment ruling: because plaintiffs had been hired in violation of the Personnel Act, none of them enjoyed constitutionally protected property interests in their government jobs. Thus, due process was not implicated. Moreover, because we cannot tell whether the erroneous conclusion about due process influenced the court's assessment of damages, we remand the case so that Judge Pieras may determine whether it is necessary to reduce the awards of compensatory and-or punitive damages in consequence of our holding today. *Cf. Santiago–Negron*, 865 F.2d at 437 (remanding, under markedly similar circumstances, for new trial on damages previously awarded by jury). Lastly, we affirm the district court's order refusing to reinstate Rosario–Torres as an Executive Officer III at La Fortaleza.

*In No. 87–2097, the appeal is dismissed as to all appellants other than Miguel A. Rosario–Torres. As to him, the order declining reinstatement is affirmed.*

*In No. 87–2096, the judgment below is affirmed in part, reversed in part, and remanded to the same district judge.*

All parties shall bear their own costs.

TORRUELLA, Circuit Judge (concurring in part, dissenting in part).

The "steady drumbeat" of political discrimination cases which the majority finds in consonance with Greek music, *ante* at 315,[12] I find more akin to Greek tragedy.

---

**11.** Plaintiff was paid $1029 monthly at La Fortaleza. He testified that he was earning $885 monthly at time of trial. *See* Trial Transcript, vol. III at 238. The district court's use of a

lower earnings figure for him, 672 F.Supp. at 649, appears to have been in error.

**12.** "Diapason" is defined as "the interval or consonance of the octave in Greek music." *Web-*

But more than music, or drama, the facts of this case remind me of the fictional fantasy depicted in *Catch 22*. The government retroactively applies standards to low level employees—standards that do not even exist. These employees, obviously unable to meet the mythical "standards," face the only consequence: they lose their jobs.

## I

I cannot quarrel with Part II of the opinion as this result is mandated by the Supreme Court's decision in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). This hypertechnical outcome in part avoids, for our Court, the embarrassment of ruling that public employees satisfactorily working in the capacity of drivers, messengers, typists and warehouse workers, for up to nine years, lack any interest protectible by the Due Process Clause. The majority cannot, however, totally sidestep the issue. There remains one plaintiff who cannot be so easily deprived of the protection afforded by *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

In *Loudermill*, the Cleveland Board of Education hired the plaintiff as a security guard. On his job application he stated that he had never been convicted of a felony, when in fact he had been convicted of grand larceny. After eleven months, the Board discovered this falsity and summarily discharged him for dishonesty without affording him the opportunity to respond to the charge or to challenge his dismissal. The Board claimed that Loudermill had no property right under state law because he fraudulently obtained his appointment. It also alleged that they would not have hired Loudermill to begin with if he had answered truthfully. Therefore, the Board argued, he lacked a "legitimate claim of entitlement" to the position under state law, a prerequisite to his due process claim. *See Board of Regents v. Roth*, 408 U.S. 564,

576–578, 92 S.Ct. 2701, 2708–2710, 33 L.Ed.2d 548 (1972). The Court rejected this argument, among other reasons because it had not been raised below, *Loudermill*, 470 U.S. at 539 n. 5, 105 S.Ct. at 1491 n. 5, but also because:

> [T]he argument relies on a *retrospective fiction inconsistent with the undisputed fact that Loudermill was hired and did hold the security guard job.* The Board cannot escape its constitutional obligations by rephrasing the basis for termination as a reason why Loudermill should not have been hired in the first place.

*Id.* (emphasis supplied).

In the present controversy, Miguel A. Rosario Torres' case[13] is even stronger than Loudermill's because of his total lack of culpability in the hiring process. Rosario Torres began working in the Office of the Governor on February 16, 1979 as an administrative clerk. He rose through various positions until July 1, 1982 when he was transferred into the career service as an "Executive Officer III," a low echelon supervisor of service and maintenance employees. Two years later, on July 15, 1985, after the change in political administration resulting from the 1984 elections, Rosario Torres was fired allegedly because he had been hired to the career position without complying with the regulations promoted pursuant to the Puerto Rico Personnel Law. *See* 3 L.P.R.A. § 1347 (Supp.1989). These internal regulations, which are exempt from general Puerto Rican law requiring the publication of government regulations,[14] establish that the government fill job vacancies from a register of eligible applicants who have passed written, oral, physical, or performance examinations, and who meet specified educational and/or work experience requirements.

The district court after hearing extensive evidence separated fact from fiction and uncontrovertedly found that the require-

---

ster's *Third New International Dictionary*, G. & C. Merriam Company, Springfield, Mass., p. 624.

**13.** And for that matter, the cases of those whose appeal we have dismissed as well.

**14.** *See* 3 L.P.R.A. § 1046 (Supp.1989). *See also Oppenheimer Méndez v. Acevedo*, 388 F.Supp. 326 (D.C.P.R.1974), *aff'd*, 512 F.2d 1373 (1st Cir.1975).

ments of the unpublished regulations were, in practice, nonexistent. *Rosario Torres v. Hernández Colón,* 672 F.Supp. 639, 651–52 (D.C.P.R.1987). No register of eligibles, no examination, and no formal requirements were ever instituted for any employee hired in the Office of the Governor. Furthermore, the government failed to comply with these "requirements" with regard to the employee that replaced Rosario Torres.[15] Thus, even if Rosario Torres had known about the unpublished regulations there was no test he could have taken, no register for which he could have qualified, and *no requirements which he could have met before he was hired.* The district court concluded that Rosario Torres was unaware of the alleged illegality of his appointment until he was notified of the possibility of his discharge. *Id.* at 651. The court ruled that this lack of knowledge rendered his appointment legal under Puerto Rican law. *Id.* at 652.

This lack of knowledge clearly distinguishes the present appeal from *Kauffman v. Puerto Rico Tel. Co.,* 841 F.2d 1169 (1st Cir.1988), a case in which we make much of being " 'reluctant to interfere with a reasonable construction of state law made by a district judge, sitting in a state who is familiar with that state's law and practices.' " *Id.* at 1173 (citing *Rose v. Nashua Bd. of Education,* 679 F.2d 279, 281 (1st Cir.1982). Certainly, an employee's lack of conscious participation in an illegal action by his employer is relevant to the determination of whether the employee's action is void *ab initio,* as the majority holds today. Because of lack of complicity by the employee in this case, there is doubt that he has breached any state law that would make his employment void *ab initio.* But the cut runs deeper.

This Court misses the point in its holdings in both *Kauffman* and the present case. Once hired, Puerto Rican law establishes that a career employee cannot be discharged except "for cause." 3 L.P.R.A. § 1336(4) (Supp.1987). At that point the employee acquires a constitutionally pro-

tected interest. Like in *Loudermill,* the undisputed facts are that Rosario Torres *was hired* and *did hold* the job from which he was fired. He performed the work for two years, was paid for this work and was otherwise held out to be the legitimate holder of his position. It is fantasy to pretend that all of this did not happen or that it has no legal significance. *Cf. Loudermill,* 470 U.S. at 539 n. 5, 105 S.Ct. at 1491 n. 5. By its ruling, the majority is applying *retroactive fiction inconsistent with those undisputed facts. Id.* Defendants "[should] not escape [their] constitutional obligations by rephrasing the basis for termination as a reason why [Rosario Torres] should not have been hired in the first place." *Id.* Today's holding allows defendants to rewrite history. Irrespective of how he got there, Rosario Torres was there, and was entitled to due process before he was removed. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1977). It is the height of audacity for defendants to interpose a nonexistent procedure from an unpublished regulation as justification for the commission of a gross constitutional violation. This court should not be taken in by such an argument.

Nor should we be taken in by pious protestations to the effect that federal courts cannot cause the violation of valid state laws. Federal courts have the power to suspend even actively enforced state laws when such suspension is required to correct civil rights violations. Furthermore, this circuit has not been at the sidelines in the exercise of this power.

In *Boston Chapter, NAACP v. Beecher,* 679 F.2d 965, 975 (1st Cir.1982), *vacated on other grounds,* 461 U.S. 477, 103 S.Ct. 2076, 76 L.Ed.2d 330 (1983), we held that the Massachusetts seniority system enacted by statute, and fully in place, must be subjugated to a district court order requiring discriminated minorities to be hired without regard to the seniority rights of other employees. We ruled, in accord with

---

**15.** This, of course, is equally applicable to the other plaintiffs whose appeal we dismiss on

technical grounds. *See Rosario Torres, supra,* at 651–52.

what is now settled federal constitutional law, that

> [R]emedies to right the wrong of past discriminations may suspend valid state law.

Although we cannot rashly thrash about suspending state laws, neither should we shy away from this remedy when appropriate.

The necessity for action in this case goes beyond the realm of what is appropriate. Political discrimination against public employees in Puerto Rico is so endemic that even this Court can take judicial notice of the deplorable situation. Taking notice, however, is not enough. To allow a subterfuge such as is claimed by defendants, particularly when it is done at the pinnacle of local government, is only to compound the deleterious impact of this unhealthy practice. To correct this problem requires a vigorous and effective remedy, as provided in *Beecher.* Which leads me to the next point of disagreement with the majority—the district court's refusal to order Rosario Torres' reinstatement, and the majority's approval of this action.

## II

Our holding on the reinstatement issue sends the wrong signals by placing the presumption in the wrong place. Although I cannot quarrel with the concept that the trial court should have some discretion in ordering reinstatement, *ante* at 321, I disagree with the conclusion denying reinstatement the status of a presumptive right which should be enforced by the district court absent exigent circumstances. To repeat Judge Atkin's excellent exposition of the issue, in the panel opinion of this appeal:[16]

> Unconstitutionally discharged employees are presumptively entitled to reinstatement. *See In re Lewis,* 845 F.2d 624, 630 (6th Cir.1988); *Banks v. Burkich,* 788 F.2d 1161, 1164 (6th Cir.1986) (discharge impermissibly based on employee's exercise of first amendment

rights); *Professional Association of College Educators v. El Paso County Community School District,* 730 F.2d 258, 268 (5th Cir.1984) (same); *Allen,* 685 F.2d at 1305 (same); *see also Santiago–Negrón,* 865 F.2d at 437 (reinstatement is "[o]ne of the remedies available for a political discharge in violation of first amendment rights"). The reasons for this rule are evident. First, reinstatement best serves the important policy of make-whole relief. *Cf. Albermarle Paper Co. v. Moody,* 422 U.S. 405, 418 [95 S.Ct. 2362, 2372, 45 L.Ed.2d 280] (1975) (discussing policy in Title VII context). Along these lines, the Eleventh Circuit has observed that "[w]hen a person loses his job, it is at best disingenuous to say that money damages can suffice to make that person whole. The psychological benefits of work are intangible, yet they are real and cannot be ignored." *Allen,* 685 F.2d at 1306. In addition, presumptive reinstatement helps to deter future violations. Employers contemplating unconstitutional employment decisions will be discouraged if their victims are promptly reinstated. *See id.* Such deterrence will be particularly welcome where, as here, the results of an election may tempt an employer to "clean house" in violation of the Constitution.

The courts, well aware of the value of these benefits, have markedly circumscribed the grounds upon which reinstatement can be refused. Reinstatement can be refused only in extraordinary cases—it cannot be refused merely because it would "revive old antagonisms," *Lewis,* 845 F.2d at 630, and it cannot be refused because the positions once held by the wrongfully discharged employees have been filled. *Banks,* 788 F.2d at 1165. To provide otherwise would ignore the sound maxim that "[r]elief is not limited to that which will be pleasing and free of irritation." *Sterzing v. Fort Bend Independent School District,* 496 F.2d 92, 93 (5th Cir. 1974), *cited with approval in Allen,* 685 F.2d at 1305.

---

**16.** The panel opinion was withdrawn, and is unpublished.

In Puerto Rico the official unemployment rate is nearly 16%.[17] Further, the government is the largest single employer.[18] In view of these two facts, reinstatement not only is appropriate, but is required. Without reinstatement to his government employment Rosario Torres has a much higher chance of remaining unemployed for a longer period of time than elsewhere in United States. Thus, reinstatement is imperative in political discrimination cases arising in Puerto Rico. Clearly, the district court should reconsider granting the reinstatement remedy on remand.

### III

Can Rosario Torres, free from fault but egregiously harmed by a blatant First Amendment violation, have less protection than Loudermill—the liar? No, this cannot be the law. Can defendants merely by paying money, repair such a brazen transgression, leaving this man to face unemployment limbo *ad infinitum?* No, this cannot be the law either.

I dissent from all but Part II of the majority opinion.

---

**17.** For the fiscal year 1988–89, the unemployment rate in Puerto Rico stood at 15.9%. Puerto Rico Department of Labor and Human Resources, Bureau of Statistics.

**18.** During the fiscal year 1988–89, 23% of Puerto Rico's active labor force were government employees. *Id.*