**Angeles CASTRELLO MERCED, et al., Plaintiffs,**

v.

**Rafael HERNANDEZ COLON, et al., Defendants.**

**Civ. No. RLA 86–1172 JAF.**

United States District Court, D. Puerto Rico.

June 20, 1990.

---

Rafael F. Castro–Lang, San Juan, P.R., for plaintiffs.

Zuleika Llovet, Saldaña, Rey, Moran & Alvarado, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

This is another civil rights case brought by employees of La Fortaleza (the Governor's mansion in Puerto Rico) who were dismissed from their positions following the gubernatorial election in 1984. At least three other cases involving dismissed La Fortaleza employees have already served as a basis for First Circuit decisions. *See Rosario–Torres v. Hernández–Colón*, 889 F.2d 314 (1st Cir.1989); *Santiago–Correa v. Hernández–Colón*, 835 F.2d 395 (1st Cir. 1987); *Vázquez Ríos v. Hernández Colón*, 819 F.2d 319 (1st Cir.1987). Like their counterparts before them, plaintiffs herein allege they were fired for political reasons and in violation of their rights under the first, fifth, and fourteenth amendments to the United States Constitution, as well as under Puerto Rico law. Before the court is defendants' motion for summary judgment on all causes of action.

## I. GENERAL BACKGROUND

The fourteen plaintiffs profess to be members of the Partido Nuevo Progresista ("PNP"). Prior to being dismissed they were employed at La Fortaleza in a variety of support staff positions. Initially, most if not all of the plaintiffs were hired as "conditional" or "confidential" employees, but in each case the status was changed to "career." As will be discussed in greater detail, the defendants claim that all of the plaintiffs were hired or promoted in violation of the recruitment standards prescribed by Puerto Rico's civil service laws. In any event, plaintiffs' names, titles, and monthly salaries prior to their dismissal are set forth below:

| Plaintiff | Job Title | Salary p/m |
|---|---|---|
| Angeles Castrello Merced | Typist Clerk II | $615.00 |
| Pedro J. Reyes | Revenue Assistant III | 897.00 |
| Sonia I. Monzón | Executive Officer I | 642.00 |
| Irving Trujillo Zambrana | Messenger I | 507.00 |
| Ada E. Santiago Hernández | Executive Officer II | 676.00 |
| Juan García Valcárcel | Messenger II | 507.00 |
| Irma Peninton Santos | Clerk I | 550.00 |
| Ismael Morales Lebrón | Transportation Supervisor | 767.00 |
| Lourdes Andino | Administrative Technician III | 862.00 |
| Rafael Serrano | Property Manager | 666.00 |
| Eduardo Pérez Carrión | Clerk IV | 595.00 |
| Andrés Morales Díaz | Printing Equipment Operator | 767.00 |
| Angel S. Correa | Revenue Assistant III | 863.00 |
| Migdalia López Pérez | Typist Clerk IV | 666.00 |

In the elections of 1984, codefendant Rafael Hernández Colón, of the Partido Popular Democrático ("PPD"), was elected governor of Puerto Rico, unseating his PNP predecessor. Soon thereafter, Governor Hernández Colón appointed codefendant Franklin Martínez Monge to serve as his aide in charge of La Fortaleza's administration. In May 1985, after reviewing the personnel rosters, Martínez Monge sent letters to each of the plaintiffs informing them that they had been hired or promoted to "career positions" in contravention of personnel regulations. The letters also said that this lapse of protocol alone could justify termination from employment and that the addressees were entitled to an administrative hearing to review the matter after which their future as gubernatorial staff members would be decided.

Several of the plaintiffs requested and received some sort of hearing, although it is now claimed that the whole hearing process was a "sham." Then, between July 15 and November 4, 1985, each plaintiff received another letter from Martínez Monge, this time stating that their appointments were found to be "null and void" and that their employment at La Fortaleza would be terminated. Plaintiffs soon after left their positions and the vacancies were filled with PPD faithful. Plaintiffs allege that their replacements, like themselves, were not hired in accordance with the public service hiring standards.

The present suit was filed on July 15, 1986. In addition to making two claims under Puerto Rico law, plaintiffs seek injunctive and monetary relief pursuant to 42 U.S.C. section 1983, alleging a) that they were fired for reason of their political affiliation in violation of their rights under the first amendment; *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); b) that they were deprived of due process in their termination; *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); and c) that they were deprived of their right to equal protection under the fourteenth amendment. Defendants filed papers for summary judgment on May 28, 1987. That motion was left unresolved pending first a panel and then an *en banc* decision by the First Circuit in *Rosario–Torres v. Hernández–Colón,* 889 F.2d 314 (1st Cir.1989) (*en banc*). With the *Rosario–Torres* opinion now docketed, we proceed to decide defendants' motion.

## II. STATUTE OF LIMITATIONS

As an initial matter, defendants argue that all federal causes of action should be dismissed as time-barred. It is well settled that this district has adopted Puerto Rico's one-year statute of limitations in actions brought under 42 U.S.C. section 1983. *Fernández v. Chardón,* 681

F.2d 42 (1st Cir.1982); *Gual Morales v. Hernández Vega*, 604 F.2d 730 (1st Cir. 1979); *Ramírez de Arellano v. Alvarez de Choudens*, 575 F.2d 315 (1st Cir.1978). It is equally well established that in cases alleging illegal dismissal from employment, the one-year period begins to run when a plaintiff is given notification of dismissal and not when the employment relationship actually ends. *Chardón v. Fernández*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Holden v. Commission Against Discrimination*, 671 F.2d 30, 34 (1st Cir.1982).

This action was filed July 15, 1986. Defendants assert the letters sent by Martínez Monge to the plaintiffs in May 1985 constitute notification of termination, or, in the alternative, "notification of a constitutional violation." We disagree. As stated above, the May 1985 letters merely informed plaintiffs that they had been illegally hired and that a determination regarding their employment would follow. The court does not construe the May letters as unambiguously stating that plaintiffs were being shown the door. That did not occur until the second round of letters which, with a single exception, were received on dates ranging from July 15 to November 4, 1985. It makes no difference that plaintiffs may have suspected "something was up" from the first round of letters, or even that defendants secretly planned to fire them all along; the May 1985 letters do not order dismissal and in fact invite plaintiffs to present reasons why they should be allowed to keep their jobs. Because the bulk of plaintiffs did not receive notification of termination until July 15, 1985 or after, the court finds their allegations to be timely.[1]

The alluded to exception involves plaintiff Juan García Valcárcel, who was noti-

fied of his dismissal in a letter dated June 28, 1985 and who actually left his job at La Fortaleza two days later. Because plaintiff García did not file his action within a year of notification, his section 1983 action is untimely and is hereby DISMISSED.

### III. PROCEDURAL DUE PROCESS

■ Defendants next argue that plaintiffs have failed to state a claim under due process. Essentially, the due process claim is based on the allegation that plaintiffs were asked to leave their posts without the benefit of an adequate hearing. Whether plaintiffs were entitled to any hearing at all, however, depends on whether they had a property interest in public employment, which in turn is determined by local law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Defendants submit that because plaintiffs were hired or promoted to career positions in violation of Puerto Rico's Personnel Act, any property right associated with a career position is rendered null and void under Puerto Rico law.

This was precisely the issue in *Rosario–Torres, supra,* where the First Circuit held that dismissed La Fortaleza employees hired in violation of the Governor's Office hiring regulations had no property interest in continued employment and no right to a pre-dismissal hearing. *Rosario–Torres v. Hernández–Colón*, 889 F.2d at 319–20; *accord Santiago–Negrón v. Castro–Dávila*, 865 F.2d 431, 435–37 (1st Cir.1989); *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169, 1173 (1st Cir.1988). The *en banc* court found no significance in the fact that defendants themselves hired new employees without regard to the personnel regulations, or that these same regulations were in practice seldom if ever observed. *Rosario–Torres*, 889 F.2d at 319–20.[2] In

---

1. Defendants' argument that the complaint should be dismissed under the doctrine of laches is equally unfounded. Laches is an appropriate exercise of the court's power to dismiss only where plaintiffs seek purely equitable relief and where plaintiffs' delay has unduly prejudiced defendants. *See e.g., Graffals González v. García Santiago*, 550 F.2d 687, 699 (1st Cir. 1977). Here, plaintiffs seek damages as well as

reinstatement. Moreover, defendants have not demonstrated prejudice sufficient to warrant dismissal of an otherwise timely action.

2. The dissent in *Rosario–Torres* notes that the majority reached its conclusion in spite of the fact that the lower court, as a factual matter, found that at the time they were hired plaintiffs therein were unaware of the hiring regulations,

short, the court found that "[t]wo wrongs, after all, do not make a right." *Id.*

In light of the above, plaintiffs herein can fare no better than did their former co-workers in *Rosario–Torres.* Defendants have asserted that each plaintiff was hired in violation of the Office of the Governor's Personnel Regulations, Article 7, which, whatever its history of application, appears to require examinations, public notice of opportunities, and a register of eligible candidates with respect to every job opening at La Fortaleza. Defendants also submit that most if not all of the plaintiffs lacked formal educational and/or experiential requirements for their positions. *See* Memorandum in Support of Motion for Summary Judgment at 10–17.

Plaintiffs have not pertinently contested these assertions. Therefore, finding no genuine issue of material fact as to this matter, Fed.R.Civ.P. 56, we can only follow the First Circuit's lead and conclude that because plaintiffs were not hired in accordance to Puerto Rico law they cannot benefit from a property interest in their positions. *Id.* at 319; *Kauffman v. Puerto Rico Telephone Co., supra.* Summary judgment is now GRANTED in favor of defendants on the due process claims.

## IV. FIRST AMENDMENT [3]

■ Plaintiffs' next cause of action centers on a claim that they were dismissed from their positions for being members of the PNP in violation of their first amendment right to freedom of association as protected by the doctrines espoused in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Elrod v.*

*Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Defendants counter by arguing that plaintiffs were not entitled to *Elrod–Branti* protection due to the "confidential" nature of their official duties. *See Santiago–Correa v. Hernández–Colón,* 835 F.2d 395 (1st Cir.1987); *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986). In the alternative, defendants argue they are entitled to qualified immunity from damages because the dismissals were not, at the time, a "clearly established" violation of constitutional rights. *Méndez–Palou v. Rohena–Betancourt,* 813 F.2d 1255 (1st Cir.1987); *Bonitz v. Fair,* 804 F.2d 164 (1st Cir.1986).[4]

■ *Elrod* and *Branti* established constitutional protection for public employees against patronage dismissals. Although broadly based, this protection is not unconditional, and an exception to *Elrod–Branti* protection exists when the employer can demonstrate that party affiliation is an appropriate requirement for the effective performance of the office involved. *See Branti,* 445 U.S. at 518, 100 S.Ct. at 1294–95. The First Circuit has held that in deciding the relevance of party affiliation, a court is to first ask whether the position at issue relates to partisan political interests or concerns. Then, the court is to examine

> [t]he particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some office holder whose function is such that party affiliation is an equally appropriate requirement. We would note that in conducting this inquiry, courts focus on the powers inherent in a given office, as op-

which were unpublished, and that these procedures were seldom if ever applied. *See Rosario–Torres,* 889 F.2d at 325–27 (Torruella, J., dissenting), *citing Rosario Torres v. Hernández Colón,* 672 F.Supp. 639, 651–52 (D.P.R.1987).

**3.** In addition to their due process and first-amendment claims, plaintiffs have alleged a violation of the equal protection clause of the fourteenth amendment. Because the "class" allegedly suffering discrimination consists of those employees discharged for political reasons, we agree with defendants that the so-called equal protection claim is nothing more than a restatement of the first amendment cause of action.

Viewing it as such, and concluding that plaintiffs cannot by pleading equal protection outdistance their rights under the first amendment, we GRANT defendants' motion to dismiss the equal protection cause of action for failure to state a claim.

**4.** We note that the fact that plaintiffs were "illegally" hired or promoted, while dispositive of their due process claims, *supra,* is not relevant to their allegations of first-amendment violations. *Santiago–Negrón v. Castro–Dávila,* 865 F.2d 431, 436 (1st Cir.1989).

posed to the functions performed by a particular occupant of that office. *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 242 (1st Cir.1987).

The First Circuit has further elaborated on the exemption as it applies to non-policy-making employees who nevertheless have access to confidential information. In *Vázquez Ríos v. Hernández Colón,* 819 F.2d 319 (1st Cir.1987), one of the cases involving dismissed La Fortaleza employees, the court acknowledged that "political loyalty could be deemed an appropriate requirement of the job" where the employee occupied a position of "unusually intimate propinquity relative to government leaders...." *Id.* at 324. The court distinguished between employees whose jobs "intrinsically" place them in a confidential position relative to the policy making process, and those whose jobs merely permit an "incidental" exposure to sensitive material. *Vázquez Ríos,* 819 F.2d at 325. Applying this standard in a later case, the court found cleaning persons in the governor's mansion had only "incidental" exposure to confidential information but that employees of the governor's press office routinely handled sensitive materials. *Santiago–Correa v. Hernández–Colón,* 835 F.2d 395, 397 (1st Cir.1987). Thus, the former were protected by the *Elrod–Branti* doctrine while the latter were not.

Even if certain plaintiffs are found to be protected by the *Elrod–Branti* doctrine, defendants may in some instances receive qualified immunity for civil damages. "The doctrine of qualified immunity shields a public official from liability for civil damages in a section 1983 action if, at the time of the challenged action, the statutory or constitutional right allegedly violated was not 'clearly established.'" *Méndez–Palou,* 813 F.2d at 1259. In the case at hand, the court is to consider "whether it was clearly established that employees in the *particu-*

*lar positions* at issue, in light of the responsibilities inherent in those positions, were protected from patronage dismissal." *Id.* (emphasis in original).

With these standards well in mind, we turn to examine the particulars of plaintiffs' former jobs. The following summaries are drawn from plaintiffs' official job descriptions and other evidence of record.[5] For convenience of analysis we have grouped the plaintiffs in three separate categories.

### A.

*Irving Trujillo Zambrana,* at the time of his dismissal, held the position of Messenger I and earned $507 a month. Plaintiff Trujillo's duties allegedly consisted of picking up mail at the post office and other sites and delivering it to various agencies. Trujillo also prepared "bulk rate" mail, resealed envelopes that had become unsealed, and looked after official vehicles. Apparently, Trujillo had access to the Executive Mansion and the Governor's Office at La Fortaleza.[6]

*Irma Peninton Santos* occupied the position of Clerk I. Prior to dismissal she drew a salary of $550 a month. Her duties included opening mail received from citizens and routing it to appropriate offices and agencies. She also performed such clerical activities as managing the card file corresponding to the daily mail.

*Eduardo Pérez Carrión* occupied the position of Clerk IV, from which he earned a monthly salary of $595. His work included receiving, filing, and channeling correspondence and other documents. He also arranged the office files and prepared and distributed office requisitions.

*Pedro Reyes* occupied the position of Revenue Assistant III. His duties included: registering budget and ledger entries in the Governor's Office; preparing ac-

---

5. Since defendants have moved for summary judgment, they, of course, bear the initial burden of proving that there is no genuine issue of material fact regarding plaintiffs' official responsibilities. Fed.R.Civ.P. 56.

6. The "Executive Mansion" is the Governor's personal residence at La Fortaleza. The "Governor's Office," as used herein, refers to the general administrative offices of La Fortaleza and not necessarily to the governor's personal working area, which is known as the "Governor's Own Office."

count adjustments; preparing reports of assignments and expense projections; arranging for payments of travel allowances for the governor and his staff. Reyes was dismissed from his position on July 15, 1985. At that time he was earning a monthly salary of $897.

*Angel S. Correa* was employed as Revenue Assistant II. His duties included sending invoices to different commercial and governmental entities; registering invoices in a ledger; filing documents; keeping a ledger of payments related to gasoline products and repairs of official vehicles; pre-auditing invoices and service contracts in the Governor's Office. He was earning a monthly salary of $863 at the time of his dismissal.

*Ismael Morales Lebrón* was employed as La Fortaleza's "Transportation Supervisor." As such, Morales was expected to supervise the employees in the Transportation Area, as well as perform all duties related to the management of all official vehicles in the Governor's Office. His office was located at the entrance of El Morro. At the time of his dismissal Morales received a monthly salary of $767.

*Rafael Serrano* held the position of Property Manager and earned $666 monthly. Serrano was in charge of maintaining, supervising, and inventorying all of the equipment at the various offices at La Fortaleza. His duties included preparing photographic and card indexes of the equipment; inspecting the equipment and evaluating its condition and usefulness; keeping track of equipment; supervising the repair and maintenance of equipment. Serrano had access, when duly authorized by the person working in an office, to different offices at La Fortaleza, including those in the Executive Mansion.

*Ada E. Santiago Hernández* occupied the position of Executive Officer II and earned $676 monthly. Her duties included the following: opening and maintaining personnel files for each employee at La Fortaleza; filing mail and other documents in the personnel files; answering the telephone; keeping a file of all job applications received. Santiago had access to personnel files at the Governor's Office.

*Andrés Morales Díaz* was employed as Printing Equipment Operator and earned a salary of $767. According to the job description submitted by defendants, Morales was to perform all work typical of a printing office, which includes photography, masking, developing lithographs, paging, and operating printing machines.

■ *Sonia I. Monzón* occupied the position of Executive Officer I before being transferred from La Fortaleza and demoted to Typist Clerk I.[7] At the time of her transfer she earned $642 monthly and performed the following duties: supervised the Distribution, Machines and Filing Area in the absence of the regular supervisor; prepared and sent requisition of materials; prepared and controlled procedures for revision of files; reviewed and delivered attendance sheets of personnel in her division; and instructed others in relation to channelling cases referred to the Governor's Office.

■ Based on what defendants have submitted, the court cannot say the above-named plaintiffs held positions involving any significant degree of policymaking. To the contrary, these support staff employees, on the whole, performed menial technical or clerical functions, or some combination of the three. Nor do we think defendants have sufficiently demonstrated plaintiffs' "proximity to the Governor and access to his confidential communications and

---

7. Although coplaintiff Monzón was merely transferred and demoted—rather than terminated—we find that this fact alone does not bar her first-amendment cause of action. *See Gierbolini–Colón v. Aponte–Roque,* 848 F.2d 331, 333 & n. 2 (1st Cir.1988) (treating outright demotions, which involve reductions in pay and official rank, as equivalent to discharges); *but see also Agosto-de-Feliciano v. Aponte–Roque,* 889 F.2d

1209 (1st Cir.1989) (holding that employer behavior short of actual dismissal actionable only when employee's new job situation is "unreasonably inferior" to the norm of the position). Here, because Monzón received a reduction in rank and a cut in monthly salary from $642 to $519, *Gierbolini Colón* and not *Agosto-de-Feliciano* is controlling of her case.

behavior," Defendants' Memorandum at 38, so as to justify summary judgment under the doctrine discussed in *Vázquez Ríos, supra.* At best defendants have shown only that some plaintiffs had access to personnel and financial records at La Fortaleza. While these records themselves may be regarded as confidential, we do not think that plaintiffs can be regarded as "confidential" employees merely because of the potential risk that sensitive information might "leak." *See Vázquez Ríos,* 819 F.2d at 326 n. 5, *citing Meeks v. Grimes,* 779 F.2d 417, 423 (7th Cir.1985). There has been no demonstration that the positions in question entail routine access to information related to policymaking or that these plaintiffs play a role in communicating this information to the public.

In short, we find the First Circuit's comments in *Rosario–Torres* applicable:

> These plaintiffs ... occupied low-level, non-policymaking positions: "[t]hey are modern-day equivalents of the 'hewers of wood and drawers of water.' " *Vázquez Ríos,* 819 F.2d at 322 (*quoting Joshua* 9:21). Thus, politics was not a permissible employment criterion.

> \*   \*   \*   \*   \*   \*

By the same token, defendant's qualified immunity claim [is], on this record, appropriately resolved against him. In May 1985, it was sufficiently clearly established that persons in low echelon positions such as these could not be fired because of political affiliation. *See, e.g., Fontane–Rexach v. Puerto Rico Elec. Power Auth.,* 878 F.2d 1493, 1496–98 (1st Cir.1988); *Vázquez Ríos,* 819 F.2d at 325–26; *see also Roure v. Hernández Colón,* 824 F.2d 139, 141 (1st Cir.1987) ("Defendants' position that the appointments were void, even if correct as a matter of Puerto Rico law, does not establish that defendants are entitled to qualified immunity with respect to plaintiffs' First Amendment claims."); *see*

*generally Branti,* 445 U.S. at 512 n. 6 [100 S.Ct. at 1291 n. 6.] ... The record justifies the finding that [defendants] could be held liable in money damages for violating plaintiffs' first amendment rights.

*Rosario–Torres,* 889 F.2d at 318.

Defendants' motion for summary judgment on the first amendment claims is therefore DENIED with respect to this group of plaintiffs.[8]

### B.

■ The second group includes Angeles Castrello Merced and Migdalia López Pérez.

*Angeles Castrello Merced* was employed as Typist Clerk II and earned $615 a month. Her general duties included word processing, filing, making and receiving telephone calls, distributing mail and receiving process. She worked as a secretary on duty in the Governor's Own Office and occasionally served as secretary to the Governor and the First Lady on a substitute basis.

*Migdalia López Prez* was employed as Typist Clerk IV, a position which drew a monthly salary of $666. Her duties were similar to those of plaintiff Castrello. Plaintiff López typed, filed and photocopied documents and letters related to the Executive Mansion and the Governor's Own Office. Like Castrello, López also substituted as the Governor's personal secretary when his regular secretary went on vacation.

These plaintiffs are grouped apart from the others largely due to the fact that they routinely worked as secretaries in the Executive Mansion and the Governor's Own Office, and at times their jobs required them to work for the governor himself. As the First Circuit has noted, personal secretaries of public officials may be fired because of political affiliation. *Santiago–Correa v. Hernández–Colón,* 835 F.2d at

---

**8.** With regard to the messenger (Trujillo), we note that the district court in *Rosario Torres v. Hernández Colón,* 672 F.Supp. 639 (D.P.R.1987), reached the same conclusion. There, following a trial, the court concluded that a plaintiff dismissed from the position of Messenger II at La Fortaleza, whose duties appear identical to those performed by Trujillo, established a first-amendment violation. On appeal, this part of the district court's ruling found favor with the First Circuit. *See Rosario–Torres,* 889 F.2d at 314.

397, *citing Soderbeck v. Burnett County, Wis.*, 752 F.2d 285, 288 (7th Cir.1985). Positioned as they were in close proximity with the governor, the First Lady and other high officials, and performing secretarial duties, these plaintiffs at least potentially had access to sensitive policymaking information. Therefore, we conclude that political affiliation was a proper standard for their particular positions and GRANT summary judgment in favor of defendants accordingly.

### C.

██ Finally, *Lourdes Andino* worked as an Administrative Technician III and earned a monthly salary of $862. Essentially, Andino was in charge of clerical and other types of tasks related to personnel rosters and files. She worked under the direction of the Director of Personnel and her duties included keeping up-to-date rosters of employees and vacant positions; noting appointments, resignations, lay-offs and so forth; instructing Governor's Office employees on fringe benefits; evaluating employee applications; writing letters and memoranda for the Director, and keeping abreast of the personnel regulations. She was also responsible for developing a "Training and Necessities Plan" for the agency. In performing her functions, Andino reportedly had access to the personnel files in the Governor's Office.

Based on the above, we find Andino's former position to entail "a mixed bag of duties" similar to that of the "Executive Secretary III" discussed in *Vázquez Ríos*, 819 F.2d at 327–28. While many of her duties are clearly clerical in nature, she was also required to perform tasks, such as evaluating applications, writing letters and memoranda for the director, and developing a training plan, that involved at least some degree of discretion and policymaking relating to issues of potential public importance: standards for government employment at La Fortaleza.

In short, the question of which type of duties predominate in the position of Administrative Technician III—clerical or policymaking/communicative—appears to be close and one better suited for trial than for summary adjudication. Nevertheless, with respect to qualified immunity, "the very uncertainty which pervades [the question] helps to dictate the answer: not only do the communicative aspects of the berth weigh heavily in the balance, but the closeness of the call suggests that it could not have been 'clearly established,'" when Andino was fired that political affiliation was an improper criterion for her position. *Vázquez Ríos*, 819 F.2d at 328. We therefore hold, with respect to Andino's first amendment claim, that defendants are entitled to qualified immunity for civil damages.

### V. CONCLUSION

In sum:

1. Summary judgment is GRANTED in favor of defendants on the due process and equal protection claims.

2. Juan García Valcárcel's claims are found to be time-barred, and summary judgment is GRANTED in favor of defendants accordingly.

3. Summary judgment is GRANTED in favor of defendants with respect to the first-amendment claims of coplaintiffs López and Castrello.

4. Defendants are entitled to qualified immunity with respect to the first amendment claims of coplaintiff Lourdes Andino.

5. Defendants' motion for summary judgment is DENIED with respect to the first-amendment claims of the ten other remaining plaintiffs.

IT IS SO ORDERED.